# **Attachment A**

2025 WL 2042764
Only the Westlaw citation is currently available.
United States District Court, C.D. Illinois.

JOSEPH JONES, SETH STEIDINGER, and NATASHA KOLLER, on behalf of themselves and all others similarly situated, Plaintiffs,
v.
BLACKSTONE MEDICAL SERVICES, LLC, Defendant.

Case No. 1:24-cv-01074-JEH-RLH
|
Filed: 07/21/2025

### Order

Jonathan E. Hawley U.S. DISTRICT JUDGE

**\*1** Now before the Court is Defendant Blackstone Medical Services, LLC's Motion to Dismiss Counts I-IV of the Consolidated Class Action Complaint (D. 32).[1] For the reasons set forth, *infra*, the Motion is GRANTED.

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

### I

On April 14, 2025, Plaintiffs Joseph Jones, Seth Steidinger, and Natasha Koller filed their Consolidated Class Action Complaint (D. 29) against Blackstone Medical Services, LLC (Blackstone) alleging violations of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, (Counts I-IV) and the Florida Telephone Solicitation Act (FTSA), FLA. STAT. § 501.059(5) (2023) (Count V). The individually named Plaintiffs are consumers who received telemarketing text messages and calls to their telephones from Blackstone. Defendant Blackstone is a Florida-based company that sells home sleep tests. The Plaintiffs brought their class action as representatives/members of the following classes:

**Internal Do Not Call List Class** (Jones, Steidinger, and Koller): All persons within the United States who, within the time frame(s) relevant to this action, (1) received two or more text messages from Blackstone or anyone acting on Blackstone's behalf, (2) within any 12-month period, (3) for the purpose of selling Blackstone's products and/or services, and (4) including at least one of those text messages being placed more than 30 days after such person requested that Blackstone stop calling and/or texting.

**Do Not Call Registry Class** (Steidinger): All persons in the United States who from four years prior to the filing of this action (1) were sent text messages and/or telephone calls by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of encouraging the purchase or rental of Defendant's products and/or services; and (5) where either (a) Defendant did not obtain prior express written consent to message the person or (b) the called person previously advised Defendant to "STOP" messaging them.

**FTSA Class** (Jones and Koller): All persons within the State of Florida who, (1) were sent a text message from Blackstone or anyone acting on Blackstone's behalf; (2) for the purpose of soliciting Defendant's goods and/or services, and (2) [sic] had previously communicated to Blackstone that they did not wish to receive Defendant's text messages.

(D. 29 at ECF pp. 3-4). Collectively, the Plaintiffs request the three putative classes receive monetary, injunctive, and declaratory relief for the alleged violations of the TCPA and FTSA.

Specifically, the Plaintiffs allege[2] Defendant Blackstone operates an aggressive telemarketing campaign where it repeatedly sends text messages and telephone calls to telephone numbers that have been placed on the National Do-Not-Call Registry for at least 30 days and over the messaged party's objections in order to sell home sleep tests. Plaintiff Steidinger is an Illinois resident who registered his residential cellular telephone number with the National Do-Not-Call Registry on April 18, 2018. He began receiving telephone calls and text messages to his telephone number after discussing potentially taking a home sleep test with his healthcare provider. During his first and only live conversation with Blackstone, the Plaintiff replied he was not interested in the home sleep test. After Plaintiff Steidinger's telephone number was added to the National Do-Not-Call Registry and after he advised the Defendant he was not interested in its home

sleep tests and repeatedly messaged Blackstone to "STOP", the Defendant continued to place repeated telemarketing text messages. Plaintiff Koller is a Florida resident whose cellular telephone number, upon information and belief, Blackstone obtained from Koller's doctor; Koller did not give her doctor permission to convey to Blackstone her consent to its calls. Koller repeatedly requested Blackstone to "STOP" sending her its solicitation text messages but the Defendant continued to place repeated telemarketing text messages to her cellular telephone which she used as her residential telephone line. Plaintiff Jones, a Florida resident, received a barrage of text messages on his cellular telephone, which he used for personal and residential purposes, beginning in or around September 2022 despite never having given consent to be contacted and requesting the Defendant stop multiple times. In Yelp reviews, other consumers complain about the Defendant's aggressive telemarketing and failure to abide by "stop" requests.

<sup>2</sup>    When ruling on a motion to dismiss, the court must take all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Indep. Truck Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012).

## II

**\*2** Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of claims for "failure to state a claim upon which relief can be granted". A court may grant a Rule 12(b)(6) motion to dismiss only if a complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint sufficient on its face need not give "detailed factual allegations," but it must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action". *Id.* at 555. The Court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007).

### A

Defendant Blackstone seeks the dismissal of Counts I-IV of the Consolidated Class Action Complaint (CAC), arguing the provision of the TCPA pursuant to which the Plaintiffs bring their claims, 47 U.S.C. § 227(c), does not prohibit text messages. The Plaintiffs bring Counts I and II pursuant to "47 U.S.C. § 227(c)(5), and 47 C.F.R. § 64.1200(c)(2)" and Counts III and IV pursuant to "47 U.S.C. § 227, et seq. and "47 C.F.R. § 64.1200(d) et seq." Pls.' CAC (D. 29 at ECF pp. 30, 32, 33, 35).

### 1

"Voluminous consumer complaints about abuses of telephone technology ... prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370-71 (2012). Thus, under 47 U.S.C. § 227(b), it is "unlawful for any person ... to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice" to several specified types of telephones including, among others, emergency telephone lines and telephone numbers assigned to a cellular telephone service. 47 U.S.C. § 227(b)(1)(A)(i)-(iii). The TCPA directs the Federal Communications Commission (FCC) "to prescribe regulations to implement the requirements of [Section 227(b)]." 47 U.S.C. § 227(b)(2). Section 227(b)(3) provides for a private right of action based on a violation of Section 227(b) or the regulations prescribed under it. 47 U.S.C. § 227(b)(3).

Title 47 U.S.C. § 227(c), meanwhile, directed the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Pursuant to its authority to prescribe regulations to implement methods and procedures for protecting those privacy rights, 47 U.S.C. § 227(c)(2), the FCC established a National "Do Not Call" Registry. *See* 47 U.S.C. § 227(c)(3) ("The regulations required by paragraph (2) may require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations, and to make that compiled list and parts thereof available for purchase."). Section 227(c)'s implementing regulation, 47 C.F.R. § 64.1200(c), provides in relevant part:

> No person or entity shall initiate any telephone solicitation to [ ] A residential telephone subscriber

who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.

47 C.F.R. § 64.1200(c)(2). Another implementing regulation, 47 C.F.R. § 64.1200(d), provides in relevant part:

> No person or entity shall initiate any artificial or prerecorded-voice telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity.

**\*3** 47 C.F.R. § 64.1200(d).

Section 227(c)(5) provides for a private right of action by "A person who has received more than one *telephone call* within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under [Section 227(c)] ...." 47 U.S.C. § 227(c)(5) (emphasis added).

**2**

Defendant Blackstone argues that the phrases "text message" and "SMS message" are wholly absent from Section 227(c)(5) and its implementing regulations, 47 C.F.R. § 64.1200(c) and (d). Indeed, only "call", "telephone call", and "artificial or prerecorded-voice telephone call" appear in Section 227(c) and its implementing regulations. 47 U.S.C. § 227(c)(1)(D), (c)(5); 47 C.F.R. § 64.1200(c)(2)(iii), (d). The Defendant notes that the FCC clearly indicated its intent to regulate text messages or SMS messages under 47 C.F.R. § 64.1200(a) which was implemented under Section 227(b) only.[3] Section 64.1200(a)(9) states, "As used in this paragraph (a)(9), the term 'call' includes a text message, including a short message service (SMS) call." 47 C.F.R. § 64.1200(a)(9). In their CAC and Response (D. 36) to the Motion to Dismiss, the Plaintiffs rely upon the FCC's Report and Order, CG Docket No. 02-278, FCC 03-153, *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991* (2003 Order), wherein the FCC stated:

> We affirm that under the TCPA, it is unlawful to make *any call* using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number. Both the statute and our rules[ ] prohibit these calls, with limited exceptions, "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other common carrier service, or any service for which the called party is charged."[ ] This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service.

18 FCC Rcd. 14014, 14116 para. 165 (2003) (emphasis in original). They say the 2003 Order, along with later FCC Orders, case law, and public policy make clear that "calls" encompass text messages.

[3]   The Defendant states that 47 C.F.R. § 64.1200(a) is implemented under Section 227(b) only, *not* Section 227(c). The Plaintiffs do not contest that.

The Supreme Court very recently explained:

> In an enforcement proceeding, a district court must independently determine for itself whether the agency's interpretation of a statute is correct. District courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation.

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 145 S. Ct. 2006, 2015 (2025) (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402 (2024)).[4]

Pursuant to *McLaughlin* and *Loper Bright*, the Court agrees with the Defendant that based on a plain reading of the TCPA and its implementing regulations, Section 227(c)(5) does not apply to text messages.

<sup>4</sup>  The Supreme Court's opinion in *McLaughlin Chiropractic* was issued after the parties had already briefed the Motion to Dismiss in this case. Relevant to the parties' positions in this case, *McLaughlin Chiropractic* held the Administrative Orders Review Act (or Hobbs Act), 28 U.S.C. § 2342, "does not preclude district courts in enforcement proceedings from independently assessing whether an agency's interpretation of the relevant statute is correct." 145 S. Ct. at 2013.

**\*4** Under the principles of statutory interpretation, a court must start with the text of the statute to ascertain its plain meaning. *U.S. v. Melvin*, 948 F.3d 848, 851 (7th Cir. 2020). "Unless words are otherwise defined, they 'will be interpreted as taking their ordinary, contemporary, common meaning.' " *Id.* at 852 (quoting *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014)). Section 227(c)(5) simultaneously explicitly refers to a "telephone call", a term not defined in the statute itself, and remains silent as to its application to text messages. Text messaging was not an available technology in 1991, and thus "telephone call" would not have included text messages or SMS messages. *See id.* ("We find words' ordinary, contemporary, common meaning by looking at what they meant when the statute was enacted ...."); Alex Fitzpatrick, *How Text Messages Are Being Killed and Replaced*, TIME (Dec. 3, 2014), https://time.com/3612277/text-message-history-future/ ("The world's very first text message, sent Dec. 3, 1992, was a cheerful, if early, holiday greeting: 'Merry Christmas,' it read, short and sweet."). Moreover, in today's American parlance, "telephone call" means something entirely different from "text message". Thus, under a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages. *See West v. Hoy*, 126 F.4th 567, 575 (7th Cir. 2025) (stating a court's "inquiry begins with the statutory text, and ends there as well if the text is unambiguous.") (quoting *BedRoc Ltd., LLC v. U.S.*, 541 U.S. 176, 183 (2004)); *Melvin*, 948 F.3d at 852 ("If the statutory language's plain meaning is unambiguous, [the court's] inquiry ends there.").

The fact that "telephone solicitation" appears in Section 227(c) and is defined earlier in Section 227(a) to mean "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person" does not change the plain meaning analysis. 47 U.S.C. § 227(a)(4). Section 227(a)(4) does not refer to "text message"; "telephone call or message" could not be interpreted in 1991 to telephone call or *text* message, contrary to the Plaintiffs' footnoted suggestion. Again, a statute's words are given their common meaning as of the time the statute was enacted. *Melvin*, 948 F.3d at 852.

As for the Plaintiffs' reliance upon the FCC's 2003 Order to bring "text message" within the purview of Section 227(c)(5), within the relied upon Paragraph 165, the FCC explicitly mentions "automatic telephone dialing system", "artificial or prerecorded message", and "automated or prerecorded telephone calls". 18 FCC Rcd. 14014, 14116 para. 165. In footnotes appearing within Paragraph 165, only 47 U.S.C. § 227(b) of the TCPA is cited along with 47 C.F.R. § 64.1200(a). Section 227(b), *not* 227(c), addresses restrictions on the use of "an automatic telephone dialing system or an artificial or prerecorded message", and, as already discussed, 47 C.F.R. § 64.1200(a) is the implementing regulation for Section 227(b), not Section 227(c). As the Defendant argues, the 2003 Order was only addressing text messages sent using an automatic telephone dialing system or an artificial or prerecorded message, and, thus, the 2003 Order does not even address the specific provisions of the TCPA and its regulations at issue in this case.

The Plaintiffs cobble together the FCC's 2003 Order and several later FCC Orders (dated 2012, 2015, 2016), which they describe as "unambiguous", together with 47 C.F.R. § 64.1200(e) in an effort to establish that text messages apply under Section 227(c) of the TCPA. *In re Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 1830, 1832 para. 4 (2012); *In re Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 8016 para. 107 (2015); *In re Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 31 FCC Rcd. 9074, 9092 para. 40 (2016). The Plaintiffs' approach is problematic. First, on its face and as just detailed, the 2003 Order explicitly references only Section 227(b). Second, the portions of the FCC's later Orders the Plaintiffs discuss refer back to the 2003 Order which cites only Section 227(b) and themselves fail to include citation to Section 227(c). The 2016 Order merely speaks of "covered text messages" without any reference to Section 227(c). 2016 Order, 31 FCC Rcd. 9074, 9092 para. 40. Third, 47 C.F.R. § 64.1200(e) incorporates the 2003 Order:

> **\*5** The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls or text

messages to wireless telephone numbers *to the extent described in* the Commission's Report and Order, CG Docket No. 02–278, FCC 03–153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991."

47 C.F.R. § 64.1200(e) (emphasis added). Again, the 2003 Order addressed only Section 227(b). By limiting Section 64.1200(e)'s application in such a manner, the FCC presents a complicated rather than simplified legal interpretation of "telephone call" for purposes of Section 227(c)(5).

The Court understands the FCC has a level of expertise as to the various forms of communication existing at the time of the TCPA's enactment as well as now. *See Loper Bright*, 603 U.S. at 402 ("[An agency's] expertise has always been one of the factors which may give an Executive Branch interpretation particular 'power to persuade, if lacking power to control.' ") (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). While the Court affords a certain amount of respect to the FCC's interpretation of the terms used in the TCPA, the fact remains that Section 227(c)(5) of the TCPA includes "telephone call" and does not mention text messages or SMS messages, and nowhere does the TCPA define "telephone call" to include text and/or SMS messages. As illustrated above, the FCC's interpretation of call to include text messages is a complicated one, and potentially does not even apply to Section 227(c)(5).

The Plaintiffs' position – that text messages are calls as the latter term is used in the TCPA – is an eminently reasonable one, particularly given the TCPA's purpose and the prevalence of text messaging in the U.S. today. Nevertheless, "[i]n the business of statutory interpretation, if [an interpretation] is not the best, it is not permissible." *Loper Bright*, 603 U.S. at 400. The "ordinary" principle of statutory interpretation – to start with the text of the statute to ascertain its plain meaning – provides the answer. *See id.* at 392 ("Under the [Administrative Procedure Act], it thus 'remains the responsibility of the court to decide whether the law means what the agency says.' ") (quoting *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 109 (2015) (Scalia, J., concurring in judgment)). It is not for a court to legislate by reading into the TCPA something that is not there[5]:

> The better presumption is therefore that Congress expects courts to do their ordinary job of interpreting statutes, with due respect for the views of the Executive Branch.

And to the extent that Congress and the Executive Branch may disagree with how the courts have performed that job in a particular case, they are of course always free to act by revising the statute.

*See Loper Bright*, 603 U.S. at 403. It is for Congress to respond to the issues presented in this case and to address the realities of today's technology (and the intrusions caused therefrom) which is commonplace in American life in 2025. The Court confines itself to its assigned role which does not include legislating.

[5] For these reasons, the Court need not delve into the cases the Plaintiffs discuss as support for their position that text messages are calls within the TCPA. The Court also notes that the cases included in their CAC are not binding on this Court. *See OSF Healthcare Sys. v. Insperity Grp. Health Plan*, 82 F. Supp. 3d 860, 865 (C.D. Ill. 2015) (quoting *U.S. v. Glaser*, 14 F.3d 1213, 1216 (7th Cir. 1994)) (providing that out-of-circuit precedent is not binding, though it is entitled to "respectful consideration[ ]"). The Plaintiffs' cited cases, *Hand v. Beach Ent. KC, LLC*, 456 F. Supp. 3d 1099 (W.D. Mo. 2020), and *Doohan v. CTB Invs., LLC*, 427 F. Supp. 3d 1034 (W.D. Mo. 2019), do not persuade the Court to find as Plaintiffs argue.

**\*6** The Court finds that the Plaintiffs have failed to state claims for violations of Section 227(c) of the TCPA, 47 C.F.R. § 64.1200(c), and 47 C.F.R. § 64.1200(d) given that allegedly "violative text messages" stand "at the core of Plaintiffs' factual allegations". Pls.' Resp. (D. 36 at ECF p. 2 n.1). Indeed, the Plaintiffs' reference to receipt of telephone calls in violation of the TCPA are few compared to their reference to text messages and inclusion of text message screenshots; the crux of the CAC is that their receipt of repetitive text messages prompted them to seek relief pursuant to the TCPA. The Court's finding is fatal to the Plaintiffs' requests for injunctive and declaratory relief, and the Defendant's argument that the Court has no jurisdiction to entertain those requests is therefore moot.

**B**

Because of the Court's finding that the Plaintiffs' TCPA claims must be dismissed, no federal claims remain in this case. Only Count V pursuant to Florida law remains. "A district court has 'supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.' " *West*, 126 F.4th at 575 (quoting 28 U.S.C. § 1367(a)). However, a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) [of Section 1367] if ... the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). The Court declines to exercise supplemental jurisdiction over the Plaintiffs' remaining claim under the FTSA.

For the reasons set forth, *supra*, Defendant Blackstone Medical Services, LLC's Motion to Dismiss Counts I-IV of the Consolidated Class Action Complaint (D. 32) is GRANTED. The entirety of the Plaintiffs' Consolidated Class Action Complaint (D. 29) is DISMISSED WITHOUT PREJUDICE. If the Plaintiffs choose to file an amended consolidated class action complaint, they must do so within 21 days of the date of this Order.

*It is so ordered.*

Entered on July 21, 2025

**All Citations**

Slip Copy, 2025 WL 2042764

III