## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Erin Wilson, on behalf of all )
others similarly situated, )
 )
    Plaintiff, )
 )
v. )    CIVIL ACTION FILE
 )    NO. 25-cv-03211
Tradercodes, LLC )
 )
 )
    Defendant. )
————————————————)

## PLAINTIFF'S OPPOSITION TO THE MOTION TO STAY DISCOVERY

Defendant asks this Court to stay discovery while its Rule 12(c) motion is pending. But that motion rests on a faulty premise—that text messages are not "calls" under the TCPA. Courts across the country have repeatedly held otherwise, and Congress and the FCC have long interpreted the statute and regulations to apply equally to unwanted texts. Because Defendant's dispositive motion is unlikely to succeed, no "preliminary peek" at the merits can justify halting discovery.

Compounding the problem, Plaintiff has submitted a sworn declaration confirming she received both text messages and repeated telephone calls from Defendant, underscoring that this case presents classic TCPA violations that require factual development, not premature termination. *See* Exhibit 1, Declaration of Erin Wilson.

1

Finally, Defendant has taken inconsistent positions regarding discovery and class certification. In opposing Plaintiff's prior request for additional time to file a class certification motion, Defendant argued that discovery was unnecessary and that Plaintiff should proceed without it. Rule 23 and Eleventh Circuit precedent make clear that certification requires "rigorous analysis" based on a developed factual record, not shifting arguments designed to prevent discovery entirely.

The stay should be denied.

## ARGUMENT

### I.   Text Messages are Calls under the TCPA

As one court explained, motions to stay discovery are generally disfavored:

> While motions to stay discovery may be granted pursuant to Rule 26(c), Fed. R. Civ. P., the moving party bears the burden of showing good cause and reasonableness. *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997) citing *Howard v. Galesi*, 107 F.R.D. 348, 350 (S.D.N.Y. 1985). A request to stay discovery pending a resolution of a motion is rarely appropriate unless resolution of the motion will dispose of the entire case. *Id.* In this regard, the Court must take a "preliminary peek" at the merits of a dispositive motion to see if it "appears to be clearly meritorious and truly case dispositive." *Feldman, supra*, 176 F.R.D. at 652-53.

*McCabe v. Foley*, 233 F.R.D. 683, 685 (M.D. Fla. 2006); *Arriaga-Zacarias v. Lewis Taylor Farms, Inc.*, 2008 U.S. Dist. LEXIS 80216, 2008 WL 4544470 at * 2 (M.D. Ga. Oct. 10, 2008) ("it may be helpful for the court to take a 'preliminary peek' at the merits of the dispositive motion to assess the likelihood that such motion will be granted").

Here, there is no justification for a stay since text messages are "calls" for purposes of the Telephone Consumer Protection Act ("TCPA"). The TCPA's provisions authorizing a nationwide Do Not Call List, 47 U.S.C. § 227(c), empower the FCC to establish by regulation "a list of telephone numbers of residential subscribers who object to receiving telephone solicitations," *id.* § 227(c)(3), and to prohibit telemarketers from "making or transmitting a telephone solicitation" to phone numbers on that list. *Id.* § 227(c)(3)(F). For decades, the FCC has consistently made those protections available to all residential phone subscribers, regardless of whether their phone numbers are associated with landline phones or cell phones. *See* 47 C.F.R. §§ 64.1200(c)(2), (e); *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14037 ¶¶ 33–36 (2003); *Chennette v. Porch.com*, 50 F.4th 1217, 1223 (9th Cir. 2022). The FCC has also determined that those provisions authorize it to prohibit unsolicited text messages, not just voice calls. *See* 47 C.F.R. § 64.1200(e); 18 F.C.C. Rcd. at 14115; *In re Targeting and Eliminating Unlawful Text Messages*, 38 F.C.C. Rcd. 12247, 12256–57 (2023).

In the decades since FCC established the Do Not Call List and began enforcing those protections, over 200 million phone subscribers have come to rely on them. *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 203–204 & n.5 (S.D.N.Y. 2024). Plaintiff is one of them. So when Defendant sent the Plaintiff

telemarketing texts (and calls, as described below) in violation of the FCC's rules, Plaintiff brought this lawsuit to vindicate those rights and put a stop to Defendant's unwelcome and intrusive marketing practices.

Defendant has now filed a Motion for Judgment on the Pleadings, and it's one that makes a big ask of this court. The Supreme Court recently held that courts are not automatically bound by the FCC's interpretations, and should make their own assessment of what the TCPA means. *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025). So Defendant therefore asks this court to reject the FCC's longstanding interpretations and hold that the Do Not Call List protects only voice calls, upending protections for potentially hundreds of millions of Americans.

This court should decline that request. A fresh read of the statutory text confirms that cell phone subscribers are eligible for the Do Not Call List, and that listing their number protects them from intrusive text messages, not just voice calls. But that is not how statutory interpretation works, and it's contrary to the plain meaning of the terms Congress used. And even if the statute itself weren't clear on this, later enactments and multiple express delegations of discretion to the FCC show that Congress would have intended the FCC's consistent and well-reasoned judgment to win out.

To enforce the Do Not Call List, § 227(c) authorizes recipients of unwanted "telephone solicitations" to sue for violations of the FCC's rules. 47 U.S.C. § 227(c)(5). In relevant part, that private right of action provision says that suit may be brought by anyone who "has received more than one telephone call within any 12-month period … in violation of the regulations." *Id.*

Defendant contends that because the private right of action provision uses the word "call," and because the Do Not Call List provisions do not use the specific terms "text message" or "SMS message" anywhere, Congress did not intend for the Do Not Call List protections to cover text messages. It is unclear whether Defendant is arguing that the FCC is prohibited from regulating texts to numbers on the Do Not Call List *at all*, or whether Defendant is asserting that *only* the private right of action provision is limited to voice calls. But either way, Defendant gets the statute wrong. The Do Not Call List provisions authorize the FCC to regulate "telephone solicitations," a defined term that plainly includes text messages. *See* 47 U.S.C. § 227(a)(4), (c)(1), (c)(3)(F). And the private right of action has the same scope as those other provisions.

First, Section 227(c) authorizes the FCC to prohibit unwanted telephone solicitations of all kinds, including text messages. The core of § 227(c) is its prohibition on sending "telephone solicitations" to numbers on the Do Not Call List. 47 U.S.C. § 227(c)(1), (3)(F). The statute defines a "telephone solicitation" in

relevant part to mean "the initiation of a telephone *call or message* … which is transmitted to any person." 47 U.S.C. § 227(a)(4) (emphasis added). That definition plainly encompasses modern text messages. As further explained below, the word "call" in the TCPA encompasses text messages. *See infra*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("we hold that a text message is a 'call' within the TCPA"). That interpretation follows from "the ordinary, contemporary, common meaning of the verb 'to call.'" *Satterfield*, 569 F.3d at 953–54 & n.3. And even if the word "call" alone weren't enough, contemporary dictionary definitions of the word "message" emphasized that it encompassed *all* sorts of communication, both spoken *and* written. *See* Black's Law Dictionary, 6th Ed. ("any notice, word, or communication, no matter the mode and no matter how sent, from one person to another").[1] More generally, the definition of "telephone solicitation" focuses not on the form of a communication but whether it is made "for the purpose of encouraging" a commercial transaction. *See, e.g.*, *Hulce v. Zipongo, Inc.*, 132 F.4th 493 (7th Cir. 2025). So Congress presumably referred to "call or message" disjunctively to broadly capture a wide range of potential communication mediums. *See, e.g.*, *Davis v. HSBC Bank*

---

[1] *See also, e.g.*, Webster's College Dictionary (1991) ("a communication delivered in writing, speech, by means of signals, etc."); Oxford English Dictionary, 2d Ed. (1989) ("a communication transmitted through a messenger or other agency; an oral or written communication sent from one person to another"); Oxford American Dictionary (1980) ("a spoken or written communication").

*Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012).

The purpose and structure of the Do Not Call List provisions supports that interpretation. Congress's stated goal was "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). And "a voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Satterfield*, 569 F.3d at 954; *see Wilson v. Skopos Fin., LLC*, No. 6:25-cv-376, 2025 WL 2029274, at *4 (D. Or. July 21, 2025).

To be sure, as Defendant emphasizes that Section 227(c) does not specifically use the words "text messages" or "SMS messages." That is unsurprising, because the TCPA was enacted in 1991, and the first-ever text message wasn't sent until 1992. *See Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015). But as just explained, the statute *does* explicitly cover any "telephone solicitation," which is expressly defined to include any "call or message." 47 U.S.C. § 227(a)(4). It is the meaning of those terms that governs, not the specific facts or technology that Congress would have had in mind in 1991. "The fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 550 (2d Cir. 2024) (quoting *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 212, (1998)).

7

Just as § 227(c)'s substantive provisions allow the FCC to regulate text messages, the private right of action in § 227(c)(5) authorizes suit when those rules are violated. Section 227(c)(5)'s grants a private right of action to enforce the Do Not Call List regulations to any "person who has received more than one telephone call within any 12-month period … in violation of the regulations." 47 U.S.C. § 227(c)(5). That is "a straightforward provision designed to achieve a straightforward result"—to enable "each person to protect his own personal rights" under § 227(c). *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 650 (4th Cir. 2019).

Defendant doesn't dispute that text messages can be sent "in violation of the regulations." 47 U.S.C. § 227(c)(5). The FCC's regulations explicitly say so. *See* 47 C.F.R. § 64.1200(e). Defendant nevertheless contends that Congress's use of the word "call" in § 227(c)(5) limits private judicial remedies exclusively to *voice* calls that violate the regulations. That's incorrect.

It is well established that the word "call" in the TCPA includes text messages. As the Ninth Circuit has explained, the "ordinary, contemporary, common meaning" of the word "call" is simply "to communicate or try to get into communication with a person by a telephone." *Satterfield*, 569 F.3d at 953–54 &

8

n.3 (quoting Webster's Third New International Dictionary 318 (2002)).[2]

Accordingly, the FCC has recognized since 2003 that when the statute says "call," it means not just to traditional voice calls but also modern text messages. 18 F.C.C. Rcd. at 14115 ¶ 165 (defining telemarking calls to "encompass[] both voice calls and text calls to wireless numbers"). And courts have repeatedly reached the same conclusion. *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)."); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (holding "that a text message is a 'call' within the TCPA"); *Dawson v. Porch.com*, 2024 WL 4765159, at *4 (W.D. Wa. Nov. 13, 2024) (collecting cases).

That meaning of "call" is especially clear in neighboring provisions. Notably, there is only one other reference to "calls" in § 227(c), and it has the same breadth as "telephone solicitations." In § 227(c)(1)(D), Congress directed the FCC to assess whether it needed additional statutory authority "to further restrict telephone solicitations, including those *calls* exempted under subsection (a)(3)" (emphasis added). In the original TCPA, subsection (a)(3) referred to the statutory

---

[2] *See also, e.g.*, Webster's College Dictionary (1991) ("to communicate or try to communicate with by telephone"); The New Merriam-Webster Dictionary (1989) ("to get or try to get in communication with by telephone"); Oxford English Dictionary, 2d Ed. (1989) ("a summons or communication by telephone").

definition of "telephone solicitation." *See* Telephone Consumer Protection Act of 1991, Pub. L. 102–243, 105 Stat. 2394, § 3(a). So § 227(c)(1)(D)'s reference to "calls exempted under" the definition of "telephone solicitation" presumably mirrored that definition—which, as explained above, broadly encompasses a "telephone call or message" and thus covers text messages even more clearly than the word "call" standing alone. 47 U.S.C. § 227(a)(4); *see supra*.

Similarly, § 227(b)(1)(A), an autodialer provision, uses the word "call" several times to describe a prohibited transmission to both a "cellular telephone" and "a paging service." A typical paging device in the early 1990s would have displayed an incoming message as written text, usually a phone number to call.[3] So those uses of the word "call" must have encompassed both voice and text transmissions, too.

Defendant cites one of the only district court decision post-*McLaughlin* that has rejected that longstanding interpretation, *Jones v. Blackstone Medical Services, LLC*, No. 1:24-cv-1074, 2025 WL 2042764 (C.D. Ill. July 21, 2025). But *Jones* is unpersuasive. There, the court held that a text message could not be a "call" for purposes of § 227(c)(5)'s private right of action because "[t]ext messaging was not

---

[3] *See, e.g.*, **Paging Network, Inc., Annual Report, at 8 (1993)**, available at https://digital.library.mcgill.ca/images/hrcorpreports/pdfs/6/639549.pdf (noting that 92 percent of the company's pagers could "transmit a numeric message such as a telephone or account number to the subscriber").

an available technology in 1991," and "in today's American parlance, 'telephone call' means something entirely different from 'text message.'" *Id.* at *4. But that gets statutory interpretation wrong in two important ways. First, as the Supreme Court has warned, "modern intuition" doesn't always match "evidence of a term's meaning at the time of [a statute]'s enactment." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 114 (2019). When there's a mismatch, the contemporary meaning of the text is what controls, not present-day usage. *See id.* And second, as explained above, it's irrelevant that Congress didn't have text messages specifically in mind in 1991. *See supra* (citing *Oncale*, 523 U.S. at 79; *Nat'l Cable & Telecom. Ass'n*, 567 F.3d at 665; *Salazar*, 118 F.4th at 550; *Yeskey*, 524 U.S. at 212). "The mere fact that Congress did not envision the ubiquitousness of text messaging in 1991 does not mean the FCC's conclusion lacks support." *Wilson,* 2025 WL 2029274, at *4.

*Jones* also disregarded the FCC's longstanding interpretation of "call" to include text messages because the FCC, until 2023, had only articulated that interpretation in the context of the statute's autodialer prohibitions. 2025 WL 2042764, at *4–5. But that's unsurprising. The Do Not Call List provisions are built around the defined term "telephone solicitation," so the standalone word "call" is much more extensively used in § 227(b)'s autodialer and robocall

11

prohibitions, or in associated definitional provisions.[4] That's why the FCC first determined that "call" includes text messages in the § 227(b) context, and only more recently memorialized in a formal regulation that "call" has the same meaning in the Do Not Call List context. *See* 47 C.F.R. § 64.1200(e); *In re: Targeting and Eliminating Unlawful Text Messages*, 88 Fed. Reg. 20800, 20802 ¶ 6 (2023); *In re: Targeting and Eliminating Unlawful Text Messages*, 38 F.C.C. Rcd. 12247, 12256–57 ¶ 26 (2023). But that doesn't mean there's any daylight between § 227(b) and § 227(c) on this particular question, and neither *Jones* nor Defendant identifies any. *See United States v. Paulson*, 68 F.4th 528, 555 (9th Cir. 2023) (absent cause to think otherwise, "a word or phrase is presumed to bear the same meaning throughout a text"). In fact, reading the word "call" differently in § 227(c)(5) than in neighboring provisions would make no sense. *See, e.g.*, 38 F.C.C. Rcd. at 12257 (rejecting that "anomalous" interpretation). If Congress intended to cabin § 227(c)(5)'s private right of action to *exclude* text messages, it wouldn't have conveyed that by using a term that elsewhere in the statute *includes* them.

---

[4] *See* Telephone Consumer Protection Act of 1991, Pub. L. 102–243, 105 Stat. 2394, § 3(a) (using "call" or "calls" in the original text of 47 U.S.C. §§ 227(a)(1), 227(a)(3), 227(b)(1)(A), 227(b)(1)(B), 227(b)(2)(A), 227(b)(2)(B), 227(c)(1)(D), 227(c)(5), 227(d)(1)(A), 227(d)(3)).

Even if the statute left room to doubt that a text message can be an actionable violation of the Do Not Call List provisions (which it doesn't), the FCC's longstanding interpretation of the word "call" should still carry the day. As previously explained, the FCC is regulating here with discretionary authority expressly delegated by Congress. *See supra*. Acting under that express delegation, the FCC has reasonably explained that prohibiting texts to numbers on the Do Not Call List "make[s] … enforcement easier," "eliminate[s] any potential confusion in the industry," and aligns with both its longstanding determination that cell phone numbers are eligible for protection and the established meaning of the word "call" in other TCPA contexts. 38 F.C.C. Rcd. at 12256–57 ¶¶ 26–27. Because the FCC acted reasonably and consistently in reaching that conclusion, this Court should affirm that "reasoned decisionmaking." *Loper Bright*, 603 U.S. at 395. Or, at a minimum, this court should look to the FCC's longstanding and consistent interpretation of the word "call" as an "informed judgment to which [it can] properly resort for guidance." *Id.* at 388 (citing *Skidmore*, 323 U.S. at 139–40).

As such, "the dismissal motion, then, is no slam-dunk, nor so likely to be granted that it warrants the requested discovery stay per Chudasama and the cases applying that decision." *Great Am. Ins. Co. v. Watson*, 2015 U.S. Dist. LEXIS 146821, *4 (S.D. Ga. 2015). The same is true here.

13

## II.    Even if the TCPA was limited to voice calls (it is not), the Plaintiff also received voice calls from the Defendant.

"A request to stay discovery pending a resolution of a motion is rarely appropriate unless resolution of the motion will dispose of the entire case. In this regard, the Court must take a 'preliminary peek' at the merits of a dispositive motion to see if it 'appears to be clearly meritorious and truly case dispositive." *Massey v. Fed. Nat. Mortgage Ass'n*, No. CV412-102, 2012 U.S. Dist. LEXIS 120753, 2012 WL 3685959, at *1 (S.D. Ga. Aug. 24, 2012). Here, the Plaintiff's complaint makes clear that "Defendant routinely violates 47 C.F.R. § 64.1200(c) and, in turn, 47 U.S.C. § 227(c)(5), by delivering, or causing to be delivered, more than one advertisement to residential numbers registered with the National Do-Not-Call Registry ("DNC Registry") without prior express invitation or permission required by the TCPA." *See* ECF No. 1 at ¶ 2. The Plaintiff's complaint goes on to explain that a class is being sought of the following:

> **National Do Not Call Registry Class:** All persons throughout the United States (1) who did not provide their telephone number to Tradercodes, LLC DBA Algo Exchange., (2) to whom  Tradercodes, LLC DBA Algo Exchange delivered, or caused to be delivered, more than one voice message or text message within a 12-month period, promoting Tradercodes, LLC DBA Algo Exchange goods or services, (3) where the person's residential or cellular telephone number had been registered with the National Do Not Call Registry for at least thirty-one days before Tradercodes, LLC DBA Algo Exchange delivered, or caused to be delivered, at least two of the voice messages or text messages within the 12-month period, (4) within four years

preceding the date of this complaint and through the date of class certification.

*Id.* at ¶ 24. The Plaintiff clearly demonstrated receipt of multiple messages from the text messages attached to the Complaint. However, this is not the only contact received by the Plaintiff from the Defendant. As explained in the Plaintiff's attached declaration:

- In addition to the text messages received, I got multiple phone calls from Algo Exchange.
- This includes calls from the number 239-235-4847 on April 23rd, 2025 at 1:41 PM EST and on April 25th, 2025 at 12:26 PM EST.
- Wanting the calls to stop, at 2:14 PM EST on April 25th, 2025, I returned the call to 239-235-4847 to request the caller to stop contacting me.
- After a few rings, I was routed to a generic, anonymous voicemail machine asking me to leave a message.
- I introduced myself, stated that I never opted in to being called, and requested the caller to not contact me again. I then hung up the phone.
- Despite this, on April 28th, 2025 at 2:12 PM EST, I received yet another unwanted phone call from 239-235-4847.
- At 3:28 PM EST on April 28th, 2025, I returned the call with the intention to request again that the caller stop contacting me. Again, I was routed to a voicemail machine.
- After stating who I was, I mentioned that I had previously requested the caller to stop calling me and that the calls were unsolicited. I then requested once more for the caller to not contact me again. I then hung up.
- On April 29th, 2025 at 6:04 PM EST, I received another unsolicited, intrusive phone call from 239-235-4847.
- I immediately returned the call at 6:06 PM EST to demand that the intrusive calls stop.
- This time, instead of eventually being routed to the same anonymous voicemail message, an agent answered the phone.

15

- Upon answering the phone, the agent stated that his name was 'Frank' with 'Algo Exchange'.
- Frank then asked if I was 'Ninapulin' - the same name Algo Exchange used to solicit their services to me in their initial texts in March 2025.
- Indeed, upon asking Frank to repeat what he said, he once again confirmed that he was calling on behalf of Algo Exchange and asked if I was Ninapulin.
- I told Frank that I was not Ninapulin, and explained how I had requested multiple times to not be contacted by this number to no avail.
- I stated that I never consented to being contacted by Algo Exchange.
- I requested Algo Exchange to stop calling and texting me and hung up.

*See* Exhibit 1 at ¶¶ 12-31. As such, staying discovery will be futile because the Defendant's motion is limited to disposing of this lawsuit because the Plaintiff's claim required the receipt of text messages and that's simply not the case.

## Conclusion

Because Defendant's Rule 12(c) motion does not clearly dispose of the case, because Plaintiff's declaration establishes repeated calls in addition to texts, and because discovery is essential for class certification under Rule 23, Defendant cannot meet its burden to justify a stay. The motion should be denied so this case can proceed in the ordinary course.

Dated: September 2, 2025

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.

16

350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
anthony@paronichlaw.com

*Counsel for Plaintiff and the proposed class*