## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| Erin Wilson, on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION FILE NO. 25-cv-03211 |
| Tradercodes, LLC | ) ) | |
| Defendant. | ) ) ) | |

## PLAINTIFF'S OPPOSITION TO THE
## <u>DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS</u>

# Table of Contents

**Table of Contents**

**Introduction** ................................................................................................ **1**

**Argument** .................................................................................................... **3**

**I. Text Messages Are "Calls" Under the TCPA, As Nearly Every Court to Consider the Question Has Held** ........................................................ **3**

    **a. Section 227(c) authorizes the FCC to prohibit unwanted telephone solicitations of all kinds, including text messages** ................................ **6**

    **b. Just as § 227(c)'s substantive provisions allow the FCC to regulate text messages, the private right of action in § 227(c)(5) authorizes suit when those rules are violated** ................................................................ **8**

    **c. Even if the statute left room to doubt that a text message can be a violation (which it doesn't), the FCC's longstanding interpretation of the word "call" should still carry the day** .......................................... **13**

    **d. Furthermore, Defendant's argument asks this Court to apply the Incorrect Standard of Review** .............................................................. **16**

**II. In the Alternative, Plaintiff Should Be Granted Leave to Amend** ............. **23**

**Conclusion** .................................................................................................. **24**

# Table of Authorities

## Cases

Ashland Hosp. Corp. v. Serv. Employees Int'l Union, 708 F.3d 737 (6th Cir. 2013) ............................................................................................ 21

Barton v. Temescal Wellness, LLC, 525 F. Supp. 3d 195 (D. Mass. 2021) ...... 4

Breda v. Cellco P'ship, 934 F.3d 1 (1st Cir. 2019) ................................. 4

Campbell-Ewald Co. v. Gomez, 577 U.S. 153 (2016) ........................... 3

Charvat v. Echostar Satellite, LLC, 630 F.3d 459 (6th Cir. 2010) ................ 18

Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833 (1986) ............. 6

Davis v. CVS Pharmacy, Inc., No. 4:24-cv-477-AW-MAF, 2025 U.S. Dist. LEXIS 167366 (N.D. Fla. Aug. 26, 2025) ................................ 4, 11, 17

Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152 (9th Cir. 2012) ................ 7

Drazen v. Pinto, 74 F.4th 1336 (11th Cir. 2023) ............................... 3, 23

Forest Grove Sch. Dist. v. T.A., 557 U.S. 230 (2009) ........................... 6

Gadelhak v. AT&T Servs., 950 F.3d 458 (7th Cir. 2020) ..................... 4

Gager v. Dell Fin. Servs., LLC, 727 F.3d 265 (3d Cir. 2013) ................... 23

Grant v. Regal Auto. Grp., 2020 U.S. Dist. LEXIS 248347 (M.D. Fla. July 30, 2020) ............................................................................ 21

Hall v. Smosh Dot Com, Inc., 72 F.4th 983 (9th Cir. 2023) ..................... 4

Harriel v. Bealls, Inc., No. 8:25-cv-1165, 2025 WL 2379617 (M.D. Fla. Aug. 15,

2025) ................................................................................................ 15

Hooters of Augusta, Inc. v. Am. Global Ins. Co., 272 F. Supp. 2d 1365 (S.D.

Ga. 2003) ........................................................................................ 23

Jones v. Blackstone Med. Servs., LLC, No. 1:24-cv-1074, 2025 WL 2042764

(C.D. Ill. July 21, 2025) ................................................................ 10, 19

Keating v. Peterson's Nelnet, LLC, 615 F. App'x 365 (6th Cir. 2015) ....... 8, 20

Krakauer v. Dish Network, L.L.C., 925 F.3d 643 (4th Cir. 2019) ................... 9

Lirones v. Leaf Home Water Solutions, LLC, No. 5:23-CV-02087, 2024 WL

4198134, at *7 (N.D. Ohio Sept. 16, 2024)………….......................................... 15

Loper Bright Enters. v. Raimondo, 603 U.S. 369 (2024) ............... 13, 15, 16, 19

Lyman v. QuinStreet, Inc., No. 23-cv-5056, 2024 WL 3406992 (N.D. Cal. July

12, 2024) ........................................................................................ 15

Mais v. Gulf Coast Collection Bureau, Inc., 768 F.3d 1110 (11th Cir. 2014)

................................................................................................ 18

Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368 (2012) ................................. 23

Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs., 567 F.3d 659

(D.C. Cir. 2009) .............................................................................. 8

New Prime Inc. v. Oliveira, 586 U.S. 105 (2019) .............................................. 11

Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75 (1998) ...................... 8

Pickens v. Hamilton-Ryker IT Sols., LLC, 133 F.4th 575 (6th Cir. 2025) ..... 13

Salazar v. Nat'l Basketball Ass'n, 118 F.4th 533 (2d Cir. 2024) ...................... 8

Satterfield v. Simon & Schuster, Inc., 569 F.3d 946 (9th Cir. 2009)........ 7, 9, 21

Saunders v. Dyck O'Neal, Inc., 319 F. Supp. 3d 907 (W.D. Mich. 2018) ........ 21

Seven Cty. Infrastructure Coal. v. Eagle Cty., 145 S. Ct. 1497 (2025) ........... 16

Schaevitz v. Braman Hyundai, Inc., 437 F. Supp. 3d 1237 (S.D. Fla. 2019) ... 21

United States v. Paulson, 68 F.4th 528 (9th Cir. 2023) ...................................... 12

Van Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037 (9th Cir. 2017)...... 22

Williams v. Myler Disab., LLC, No. 3:20-cv-00275-FDW-DCK, 2020 U.S. Dist.
LEXIS 211914 (W.D.N.C. Nov. 12, 2020) ........................................................ 5, 18

Wilson v. Skopos Fin., LLC, 2025 U.S. Dist. LEXIS 138638 (D. Or. July 21,
2025) ............................................................................................................................ 22

Zimmer Radio of Mid-Missouri, Inc. v. FCC, 145 F.4th 828 (8th Cir. 2025)
…………………………………………………………………………..... 16, 19


**Statutes**

47 U.S.C. § 227 ............................................................................................ passim

Pallone-Thune TRACED Act, Pub. L. 116-105, 133 Stat. 3274 (2019) ............ 5


**Regulations**

47 C.F.R. § 64.1200 ............................................................................... 1, 7, 12

In re Rules & Reguls. Implementing Tel. Consumer Prot. Act of 1991, 18

**F.C.C. Rcd. 14014 (2003)** ................................................................. **1, 13**

**In re Targeting & Eliminating Unlawful Text Messages, 38 F.C.C. Rcd. 12247**

**(2023)** ............................................................................ **1, 12, 15**

## Introduction

Defendant Tradercodes, LLC ("Tradercodes") asks this Court for judgment on the Plaintiff's Complaint on the ground that the TCPA's Do Not Call protections do not apply to text messages, however, the Telephone Consumer Protection Act's provisions authorizing a nationwide Do Not Call List, 47 U.S.C. § 227(c), empower the FCC to establish by regulation "a list of telephone numbers of residential subscribers who object to receiving telephone solicitations," *id.* § 227(c)(3), and to prohibit telemarketers from "making or transmitting a telephone solicitation" to phone numbers on that list. *Id.* § 227(c)(3)(F). For decades, the FCC has consistently made those protections available to all residential phone subscribers, regardless of whether their phone numbers are associated with landline phones or cell phones. *See* 47 C.F.R. §§ 64.1200(c)(2), (e); *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14037 ¶¶ 33–36 (2003). The FCC has also determined that those provisions authorize it to prohibit unsolicited text messages, not just voice calls. *See* 47 C.F.R. § 64.1200(e); 18 F.C.C. Rcd. at 14115; *In re Targeting and Eliminating Unlawful Text Messages*, 38 F.C.C. Rcd. 12247, 12256–57 (2023).

In the decades since FCC established the Do Not Call List and began enforcing those protections, over 200 million phone subscribers have come to rely

on them. *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 203–204 & n.5 (S.D.N.Y. 2024). Plaintiff is one of them. So, when Defendant sent telemarketing texts in willful violation of the FCC's rules, the Plaintiff brought this lawsuit to vindicate those rights and put a stop to Tradercodes's unwelcome and intrusive marketing practices.

Tradercodes has now filed a motion for judgment on the pleadings, and it's one that makes a big ask of this court. The Supreme Court recently held that courts are not automatically bound by the FCC's interpretations, and should make their own assessment of what the TCPA means. *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025). So Tradercodes therefore asks this court to reject the FCC's longstanding interpretations and hold that the Do Not Call List protects only voice calls, upending protections for potentially hundreds of millions of Americans who receive unwanted and non-consensual text messages.

This court should decline that request. A fresh read of the statutory text confirms that cell phone subscribers are eligible for the Do Not Call List, and that listing their number protects them from intrusive text messages, not just voice calls. Tradercodes asks this Court to substitute its judgment for Congress's and the FCC's largely because in 1991 text messages didn't exist yet. But that is not how statutory interpretation works, and it's contrary to the plain meaning of the terms Congress used. And even if the statute itself weren't clear on this, later enactments

2

and multiple express delegations of discretion to the FCC show that Congress would have intended the FCC's consistent and well-reasoned judgment to win out. Also, the Plaintiff plainly alleges that the Defendant sent the texts at issue.

Finally, as recently articulated in the Plaintiff's opposition to the motion to stay discovery, Plaintiff has submitted a sworn declaration confirming the Plaintiff received both text messages and repeated telephone calls from Defendant, so if this Court does hold that the text messages are not subject to the Court's protection, then the Plaintiff should be permitted leave to amend. *See* ECF No. 17-1, Declaration of Erin Wilson.

The Court should deny Defendant's motion in its entirety.

## Argument

### I.    Text Messages Are "Calls" Under the TCPA, As Nearly Every Court to Consider the Question Has Held.

Defendant contends that a text message is not a "call" under the TCPA and that the FCC overstepped when it interpreted a "call" to include text messages. The Supreme Court, every Circuit Court, and the majority of district courts, even after *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.,* 145 S. Ct. 2006 (2025), disagree with Defendant's position. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call'".); *Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, at n.2 (11th Cir. 2025) ("We use the terms 'robocalls' and 'robotexts' as shorthand for calls and texts made

'using any automatic telephone dialing system or an artificial or prerecorded voice'—*i.e.*, the calls and texts that the TCPA regulates….We note that even though the statute on its face does not mention text messages, the FCC—by regulation—has interpreted the word 'call' to include text messages."); *Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023) ("we hold that the receipt of an unwanted text message causes a concrete injury"); *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023); *Breda v. Cellco Partnership*, 934 F.3d 1, n.1 (1st Cir. 2019) ("The TCPA also applies to . . . text messages."); *Gadelhak v. AT&T Servs.*, 950 F.3d 458, 463 (7th Cir. 2020) ("We therefore agree with the Second and Ninth Circuits that unwanted text messages can constitute a concrete injury-in-fact.").

Defendant will likely rely on the recent order in *Davis v. CVS Pharmacy, Inc.*, No. 4:24-cv-477-AW-MAF, 2025 U.S. Dist. LEXIS 167366 (N.D. Fla. Aug. 26, 2025); one of two cases that refused to apply the above cited longstanding precedent. Contrary to what the court held in *Davis*, the Supreme Court's holding in *Campbell-Ewald* is not mere dicta. "The Supreme Court ratified the FCC's interpretation that a text message was a call for the purposes of the TCPA in *Campbell-Ewald v. Gomez* [.]" *Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195, 198 (D. Mass. 2021). Indeed, "it is unlikely that the Court would stay silent about any serious concerns that robotexts were an invalid ground for TCPA recovery in a case construing the same statute." *Id*. at 199. "Furthermore, in the most recent term Justice Kavanaugh's

4

plurality opinion in *Barr* cited the FCC's regulations applying the TCPA to text messages as the current applicable legal standard." *Id.* (citing *Barr v. American Ass'n of Political Consultants, Inc.*, 140 S.Ct. 2335, 2344 n.1, 207 L. Ed. 2d 784 (2020)). "The First, Second, Seventh, Ninth, and Eleventh Circuits have either adopted Judge Ginsburg's remark as black letter law rather than dicta or had already held that the TCPA included text messages before *Campbell-Ewald*." *Id.* at *6 (collecting cases).

"In addition to the Supreme Court and the FCC, *Congress* has also made clear the TCPA's applicability to text messages." *Williams v. Myler Disab., LLC*, No. 3:20-cv-00275-FDW-DCK, 2020 U.S. Dist. LEXIS 211914, at n. 2 (W.D.N.C. Nov. 12, 2020) (emphasis added) (citing *Pallone-Thune TRACED Act*, (the "TRACED Act") PL 116-105, December 30, 2019, 133 Stat 3274 (recognizing that text messages are covered in §227(b) in providing for streamlined information sharing with the FCC relating to "a call made or a text message sent in violation of subsection (b)"). Specifically, when Congress amended the TCPA in 2019 with the TRACED Act, it adopted the FCC's interpretation, instructing the FCC to prescribe regulations related to "a call made or *a text message* sent in violation of [227(b).]" 47 § 227(i)(1)(A) (emphasis supplied).

"Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239–40 (2009).

"Where, as here, 'Congress has not just kept its silence by refusing to overturn the administrative construction, but has ratified it with positive legislation,' we cannot but deem that construction virtually conclusive." *Commodity Futures Trading Com v. Schor*, 478 U.S. 833, 846 (1986) (quoting *Red Lion Broad. Co. v. FCC*, 395 U.S. 367, 380-81 (1969); citing *Bell v. New Jersey*, 461 U.S. 773, 785, and n.12 (1983)). When Congress amended the TCPA in 2019, not only was it aware that the FCC and every court had interpreted the statute to cover text messages, it *ratified* that interpretation with an explicit reference to text messages in the amendment. Because Congress has spoken directly on the issue, the application of the TCPA to text messages is all but conclusive and reason alone to reject Defendant's position.

### a. Section 227(c) authorizes the FCC to prohibit unwanted telephone solicitations of all kinds, including text messages.

The core of § 227(c) is its prohibition on sending "telephone solicitations" to numbers on the Do Not Call List.  47 U.S.C. § 227(c)(1), (3)(F). The statute defines a "telephone solicitation" in relevant part to mean "the initiation of a telephone *call or message* … which is transmitted to any person." 47 U.S.C. § 227(a)(4) (emphasis added). That definition plainly encompasses modern text messages. As further explained below, the word "call" in the TCPA encompasses text messages. *See infra*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("we hold that a text message is a 'call' within the TCPA"). That interpretation follows from "the ordinary, contemporary, common meaning of the

6

verb 'to call.'" *Satterfield*, 569 F.3d at 953–54 & n.3. And even if the word "call" alone weren't enough, contemporary dictionary definitions of the word "message" emphasized that it encompassed *all* sorts of communication, both spoken *and* written. *See* Black's Law Dictionary, 6th Ed. ("any notice, word, or communication, no matter the mode and no matter how sent, from one person to another").[1] More generally, the definition of "telephone solicitation" focuses not on the form of a communication but whether it is made "for the purpose of encouraging" a commercial transaction. *See, e.g.*, *Hulce v. Zipongo, Inc.*, 132 F.4th 493 (7th Cir. 2025). So Congress referred to "call or message" disjunctively to broadly capture a wide range of potential communication mediums. *See, e.g.*, *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012).

The purpose and structure of the Do Not Call List provisions supports that interpretation. Congress's stated goal was "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). And "a voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Satterfield*, 569 F.3d at 954; *see Wilson v. Skopos Fin., LLC*, No. 6:25-cv-376, 2025 WL 2029274, at *4

---

[1] *See also, e.g.*, Webster's College Dictionary (1991) ("a communication delivered in writing, speech, by means of signals, etc."); Oxford English Dictionary, 2d Ed. (1989) ("a communication transmitted through a messenger or other agency; an oral or written communication sent from one person to another"); Oxford American Dictionary (1980) ("a spoken or written communication").

(D. Or. July 21, 2025). To be sure, as Tradercodes emphasizes, Section 227(c) does not specifically use the words "text messages" or "SMS messages." That is unsurprising, because the TCPA was enacted in 1991, and the first-ever text message wasn't sent until 1992. *See Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015). But as just explained, the statute *does* explicitly cover any "telephone solicitation," which is expressly defined to include any "call *or message*." 47 U.S.C. § 227(a)(4). It is the meaning of those terms that governs, not the specific facts or technology that Congress would have had in mind in 1991. *See Oncale*, 523 U.S. at 79; *Nat'l Cable & Telecom. Ass'n*, 567 F.3d at 665. "The fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 550 (2d Cir. 2024) (quoting *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 212, (1998)).

> **b. *Just as § 227(c)'s substantive provisions allow the FCC to regulate text messages, the private right of action in § 227(c)(5) authorizes suit when those rules are violated.***

Section 227(c)(5) grants a right of action to enforce the Do Not Call List regulations to any "person who has received more than one telephone call within any 12-month period … in violation of the regulations." 47 U.S.C. § 227(c)(5). That is "a straightforward provision designed to achieve a straightforward result"—to enable "each person to protect his own personal rights" under § 227(c).

8

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 650 (4th Cir. 2019).

It is well established that the word "call" in the TCPA includes text messages. As the Ninth Circuit has explained, the "ordinary, contemporary, common meaning" of the word "call" is simply "to communicate or try to get into communication with a person by a telephone." *Satterfield*, 569 F.3d at 953–54 & n.3 (quoting Webster's Third New International Dictionary 318 (2002)).[2] Accordingly, the FCC has recognized since 2003 that when the statute says "call," it means not only traditional voice calls but also modern text messages. 18 F.C.C. Rcd. at 14115 ¶ 165 (defining telemarking calls to encompass both).

That meaning of "call" is especially clear in neighboring provisions. Notably, there is only one other reference to "calls" in § 227(c), and it has the same breadth as "telephone solicitations." In § 227(c)(1)(D), Congress directed the FCC to assess whether it needed additional statutory authority "to further restrict telephone solicitations, including those *calls* exempted under subsection (a)(3)" (emphasis added). In the original TCPA, subsection (a)(3) contained the statutory definition of "telephone solicitation." *See* Telephone Consumer Protection Act of 1991, Pub. L. 102–243, 105 Stat. 2394, § 3(a). So § 227(c)(1)(D)'s reference to

---

[2] *See also, e.g.*, Webster's College Dictionary (1991) ("to communicate or try to communicate with by telephone"); The New Merriam-Webster Dictionary (1989) ("to get or try to get in communication with by telephone"); Oxford English Dictionary, 2d Ed. (1989) ("a summons or communication by telephone").

"calls exempted under" the definition of "telephone solicitation" presumably mirrored that definition—which, as explained above, broadly encompasses a "telephone call or message" and thus covers text messages even more clearly than the word "call" standing alone. 47 U.S.C. § 227(a)(4); *see supra*.[3]

Similarly, § 227(b)(1)(A), an autodialer provision, uses the word "call" several times to describe a prohibited transmission to both a "cellular telephone" and "a paging service." A typical paging device in the early 1990s would have displayed an incoming message as written text, usually a phone number to call.[4] So those uses of the word "call" must have encompassed both voice and text transmissions, too. Tradercodes heavily relies on *Jones v. Blackstone Medical Services, LLC*, No. 1:24-cv-1074, 2025 WL 2042764 (C.D. Ill. July 21, 2025), but *Jones* is unpersuasive. There, the court held that a text message could not be a "call" for purposes of § 227(c)(5)'s private right of action because "[t]ext messaging was not an available technology in 1991," and "in today's American parlance, 'telephone call' means something entirely different from 'text message.'"

---

[3] Because § 227(c)(1)(D) confirms that the variation between Congress's use of a "call or message" in § 227(a)(4)'s capacious definition and its use of "call" in § 227(c)(5) is immaterial, the one district court that recently relied on this distinction to adopt a restrictive interpretation is unpersuasive. *Contra Davis v. CVS Pharmacy, Inc.*, No. 4:24-cv-477, 2025 WL 2491195, at *2 (N.D. Fla. Aug. 26, 2025).

[4] *See, e.g.*, **Paging Network, Inc., Annual Report, at 8 (1993)**, available at https://digital.library.mcgill.ca/images/hrcorpreports/pdfs/6/639549.pdf (noting that 92 percent of the company's pagers could "transmit a numeric message such as a telephone or account number to the subscriber").

*Id.* at *4.

But that gets statutory interpretation wrong in two important ways. First, as the Supreme Court has warned, "modern intuition" doesn't always match "evidence of a term's meaning at the time of [a statute]'s enactment." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 114 (2019). *Jones* and other cases go astray when they reflexively apply present-day intuitions about how text messages are discussed to language from 1991, before the first text message was ever sent.[5] And second, as explained above, it's irrelevant that Congress didn't have text messages specifically in mind in 1991. *See supra* (citing cases). "The mere fact that Congress did not envision the ubiquitousness of text messaging in 1991 does not mean the FCC's conclusion lacks support." *Wilson,* 2025 WL 2029274, at *4.

*Jones* also disregarded the FCC's longstanding interpretation of "call" to include text messages because the FCC, until 2023, had only articulated that interpretation in the context of the statute's autodialer prohibitions. 2025 WL 2042764, at *4–5. But that's unsurprising. The Do Not Call List provisions are built around the defined term "telephone solicitation," so the standalone word "call" is much more extensively used in § 227(b)'s autodialer and robocall

---

[5] *Compare, e.g.*, *Davis*, 2025 WL 2491195, at *1 (relying on how "a normal person refers to a text message"), *with* 47 U.S.C. § 227(b)(1)(A)(iii) (using the word "call" to refer to a message sent to a "paging service," the most analogous type of text-message-like communication in 1991).

prohibitions, or in associated definitional provisions.[6] That's why the FCC first determined that "call" includes text messages in the § 227(b) context, and only more recently memorialized in a formal regulation that "call" has the same meaning in the Do Not Call List context. *See* 47 C.F.R. § 64.1200(e); *In re: Targeting and Eliminating Unlawful Text Messages*, 88 Fed. Reg. 20800, 20802 ¶ 6 (2023); *In re: Targeting and Eliminating Unlawful Text Messages*, 38 F.C.C. Rcd. 12247, 12256–57 ¶ 26 (2023). But that doesn't mean there's any daylight between § 227(b) and § 227(c) on this particular question, and neither *Jones* nor Tradercodes identifies any. *See United States v. Paulson*, 68 F.4th 528, 555 (9th Cir. 2023) (absent cause to think otherwise, "a word or phrase is presumed to bear the same meaning throughout a text"). In fact, reading the word "call" differently in § 227(c)(5) than in neighboring provisions would make no sense. *See, e.g.*, 38 F.C.C. Rcd. at 12257 (rejecting that "anomalous" interpretation). If Congress intended to cabin § 227(c)(5)'s private right of action to *exclude* text messages, it wouldn't have conveyed that by using a term that elsewhere in the statute *includes* them.

---

[6] *See* Telephone Consumer Protection Act of 1991, Pub. L. 102–243, 105 Stat. 2394, § 3(a) (using "call" or "calls" in the original text of 47 U.S.C. §§ 227(a)(1), 227(a)(3), 227(b)(1)(A), 227(b)(1)(B), 227(b)(2)(A), 227(b)(2)(B), 227(c)(1)(D), 227(c)(5), 227(d)(1)(A), 227(d)(3)).

### c. Even if the statute left room to doubt that a text message can be a violation (which it doesn't), the FCC's longstanding interpretation of the word "call" should still carry the day.

Since 2003, the FCC held that text messages constitute calls within the meaning of the TCPA. *In Re Rules & Reguls. Implementing Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 (2003) (defining telemarking calls to "encompass[] both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls") (the "2003 Order"). In *Satterfield*, the Ninth Circuit found that the FCC's interpretation was reasonable and consistent with the dictionary's definition of "call," how text messages are sent and used, and the purposes of the TCPA. 569 F.3d at 954.

To be sure, mere ambiguity is no longer automatic cause to defer to an agency. *See Loper Bright*, 603 U.S. at 412–13 (overruling *Chevron*). But courts still defer when a statute "expressly delegate[s] to an agency the authority to give meaning to a particular statutory term," tasks an agency "to fill up the details of a statutory scheme," or tells an agency "to regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility, such as 'appropriate' or 'reasonable.'" *Id*. at 395. In that case, a court's role is merely to "fix[] the boundaries" of agency authority and ensure "reasoned decisionmaking" within those outer bounds. *Id.*; *see Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th

575, 587–88 (6th Cir. 2025).

This case falls at the intersection of *two* such express delegations. Mainly, § 227(c) itself is an express delegation of rulemaking discretion to the FCC: Congress tasked the FCC with evaluating alternative approaches based on (among other things) their "effectiveness in protecting … privacy rights" and their "other advantages and disadvantages." 47 U.S.C. § 227(c)(1)(A). It then told the FCC to make rules "that *the Commission determines* are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(E) (emphases added). That language grants discretionary authority to "fill up the details," accompanied by "flexibility" to determine what rules will best effectuate the TCPA's goals. *Loper Bright*, 603 U.S. at 395.  Congress in 1993 asked the FCC to decide whether cell phone companies are "common carriers" whose subscribers have rights under the TCPA, and the FCC did. *Compare* 47 U.S.C. § 332(a)(1)(A), *with* 47 U.S.C. § 227(c)(3). That expressly delegated the FCC "authority to give meaning to a particular statutory term." *Loper Bright*, 603 U.S. at 395. If Congress didn't speak on this issue, then it clearly looked to the FCC's expert judgment to supply an answer. *See U.S. Telecom Ass'n v. FCC*, 825 F.3d 674, 718 (D.C. Cir. 2016) (express delegation was evidence that Congress expected telecommunications technology to evolve).

It follows that the way to honor Congress's intent here is to "respect [that]

delegation" and affirm the FCC's "reasoned decisionmaking" on this question. *Loper Bright*, 603 U.S. at 395. Recognizing as much, courts have continued to defer to the FCC's well-reasoned decision to allow registration of cell phone numbers, even after *Loper Bright* and *McLaughlin*. *See, e.g.*, *Harriel v. Bealls, Inc.*, No. 8:25-cv-1165, 2025 WL 2379617, at *2 (M.D. Fla. Aug. 15, 2025); *Wilson*, 2025 WL 1784815, at *5; *Lirones v. Leaf Home Water Solutions, LLC*, No. 5:23-CV-02087, 2024 WL 4198134, at *7 (N.D. Ohio Sept. 16, 2024); *Lyman v. QuinStreet, Inc.*, No. 23-cv-5056, 2024 WL 3406992, at *4 (N.D. Cal. July 12, 2024). This court should do the same.

As explained, the FCC is regulating here with discretionary authority expressly delegated by Congress. *See supra*. Acting under that express delegation, the FCC has reasonably explained that prohibiting texts to numbers on the Do Not Call List "make[s] … enforcement easier," "eliminate[s] any potential confusion in the industry," and aligns with both its longstanding determination that cell phone numbers are eligible for protection and the established meaning of the word "call" in other TCPA contexts. 38 F.C.C. Rcd. at 12256–57 ¶¶ 26–27. Because the FCC acted reasonably and consistently in reaching that conclusion, this Court should affirm that "reasoned decisionmaking." *Loper Bright*, 603 U.S. at 395. Or, at a minimum, this court should look to the FCC's longstanding and consistent interpretation of the word "call" as an "informed judgment to which [it can]

15

properly resort for guidance." *Id.* at 388 (citing *Skidmore*, 323 U.S. at 139–40).

In any event, the FCC's interpretation is, at the very least, an "informed judgment" that should be accorded "great weight" by this court. *Loper Bright*, 603 U.S. at 388; *see Skidmore v. Swift Co.*, 323 U.S. 134, 139–40 (1944). The FCC's position is grounded in the agency's specialized expertise, consistent across decades, and well-reasoned. So, it has all the hallmarks of an agency decision with "the power to persuade." *Loper Bright*, 603 U.S. at 388.

### d.  Furthermore, Defendant's argument asks this Court to apply the Incorrect Standard of Review.

Contrary to Defendant's contention, "when an agency exercises discretion granted by a statute, judicial review is typically conducted under the Administrative Procedure Act's deferential arbitrary-and-capricious standard. ***Under that standard, a court asks not whether it agrees with the agency decision, but rather only whether the agency action was reasonable and reasonably explained***." *Seven Cty. Infrastructure Coal. v. Eagle Cty.*, 145 S. Ct. 1497 (2025) (emphasis added) (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 391-392) (citing *Motor Vehicle Mfrs. Ass'n of United States, Inc.* v. *State Farm Mut. Auto. Ins. Co.*, 463 U. S. 29, 43 (1983); *FCC* v. *Prometheus Radio Project*, 592 U. S. 414, 423 (2021) ("A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision.") (emphasis added); *see also Zimmer Radio of Mid-Missouri, Inc. v.*

*FCC,* 145 F.4th 828 (8th Cir. 2025) ("We consider a challenge to the agency's decision making under the APA's arbitrary-and-capricious standard next. But because Congress granted the FCC discretion to interpret Section 202(h) within the public interest, we decline to grant the petition on the basis that the FCC's definition of 'competition' is inconsistent with Section 202(h).").

Under the correct standard of review, it cannot be said that the FCC, under its grant of authority from Congress, acted unreasonably or inconsistent with the statute when it extended the TCPA's protections, including the DNC Provision, to texts. **Congress adopted the FCC's interpretation** when it amended the TCPA. *See Williams v. Myler Disab., LLC*, No. 3:20-cv-00275-FDW-DCK, 2020 U.S. Dist. LEXIS 211914, at n. 2 (W.D.N.C. Nov. 12, 2020) ("In addition to the Supreme Court and the FCC, **Congress** has also made clear the TCPA's applicability to text messages.") (citing *TRACED Act*, PL 116-105, December 30, 2019, 133 Stat 3274. The Supreme Court and every Circuit Court have so agreed.

In *Davis*, the court applied the wrong standard of review, relying instead on *McLaughin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025). *See* 2025 U.S. Dist. LEXIS 167366, at *9 (N.D. Fla. Aug. 26, 2025). The applicable standard is not "appropriate respect" as the *Davis* court held, but instead an inquiry into whether the FCC acted reasonably and reasonably explained its exercise of discretion. Such is the case here because Congress instructed the FCC to "initiate a

rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S. Code § 227(c)(1) (titled "Protection of Subscriber Privacy Rights").

Indeed, "Congress vested the FCC with considerable authority to implement the Telephone Act." *Charvat v. Echostar Satellite, LLC*, 630 F.3d 459 (6th Cir. 2010). In furtherance of that goal, Congress directed the FCC to "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish the purposes of this section." *See Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F. 3d 1110, 1123 (11th Cir. 2014) (citing 47 U.S.C. § 227(c)(1)(E)). Because the FCC exercised its discretion granted by statute and was rulemaking, the APA's deferential arbitrary-and-capricious standard applies. To be sure, "[t]he scope of this review 'is narrow,' and [we] must exercise appropriate deference to [the FCC's] decisionmaking and not substitute [our] own judgment for that of the [Commission]." *Zimmer Radio of Mid-Missouri, Inc. v. FCC,* 145 F.4th 828 (8th Cir. 2025).

Under this standard, it cannot be said that the FCC's action was unreasonable or not reasonably explained. In the 2023 Order, the FCC explained its reasoning for clarifying and codifying the DNC protections to cover text message solicitations:

> Consumers increasingly rely on text messaging to stay in touch with friends and family, to do business, communicate with their child's school, and get information from their government. On many devices, people immediately see some or all of the messages once received on the device, whereas they have the

18

option to ignore unwanted calls.  This causes consumers to open their texts quickly because texts are an expected trusted source of communications, not annoyance and scams.  The rise of junk texts jeopardizes consumer trust in text messaging[,] frustrate[s] consumers, and [causes] serious harm.

*Id*. at ¶1. Accordingly, "the Commission has considered the relevant factors and articulated a rational connection between the facts found and the choice made." *See Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 105 (1983).

In fact, in *Jones v. Blackstone Med. Servs., LLC*, which Defendant cites in support of its motion, court found "[t]he Plaintiffs' position — that text messages are calls as the latter term is used in the TCPA — *is an eminently reasonable one*, particularly given the TCPA's purpose and the prevalence of text messaging in the U.S. today." No. 1:24-cv-01074-JEH-RLH, 2025 U.S. Dist. LEXIS 138371, at *14 (C.D. Ill. July 21, 2025) (emphasis supplied). Defendant concedes that for another section of the statute, it is not unreasonable to include texts as calls. *See* Mot. at 6.

Had the court in that case applied the correct standard of review to the FCC's action, it should have followed the FCC's interpretation because nothing about it is arbitrary and capricious. *See Zimmer Radio of Mid-Missouri, Inc. v. FCC,* 145 F.4th 828 (8th Cir. 2025) ("An agency action may be arbitrary and capricious in many ways: by (1) 'rel[ying] on factors which Congress has not intended it to consider,' (2) 'entirely fail[ing] to consider an important aspect of the problem,' (3) 'offer[ing] an explanation for its decision that runs counter to the evidence before the agency,' or (4) offering an explanation that 'is so implausible that it could not be ascribed to

19

a difference in view or the product of agency expertise.'" (quoting *Citizens Telecomms. Co. of Minn., LLC v. FCC*, 901 F.3d 991, 1000 (8th Cir. 2018)).

Even under the standard Defendant advances, this Court should "afford[] appropriate respect to the agency's interpretation." *Loper Bright*, 603 U.S. at 402). As *Loper Bright* explains, a court may apply "deferential review upon concluding that a particular statute empowered an agency to decide how a broad statutory term applied to specific facts found by the agency." *Id.* Because, as discussed above, Congress empowered the FCC to decide how to apply a statutory term to specific facts, the FCC's interpretation is entitled to "deferential review." *Loper Bright*, 603 U.S. at 388. This court should therefore, "unhesitatingly afford deference to the [FCC] holding that a text message should be treated as a 'call' for purposes of the TCPA." *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015).

Moreover, as explained, the FCC's interpretation of a text message being a call is not at odds with the statute. Because the TCPA does not define the term "call", courts interpret the word "according to its 'ordinary, contemporary, common meaning.'" *Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1247 (S.D. Fla. 2019) "[T]he dictionary definition of 'call' [i]s 'to communicate with or try to get into communication with a person by a telephone.'" *Id.* (quoting *Satterfield*, 569 F.3d at 953-54). "Other courts have adopted this definition in the TCPA context." *Id.* (citing *Ashland Hosp. Corp. v. Serv. Employees Int'l Union*, 708 F.3d 737, 742

(6th Cir. 2013); *Fillichio v. M.R.S. Assocs., Inc.*, No. 09-61629-CIV, 2010 WL 4261442, at *3 (S.D. Fla. Oct. 19, 2010)).

The transmission of a text message to a consumer's telephone falls squarely within the definition of the word "call" as the purpose is to communicate with the person via their telephone. *See Satterfield*, 569 F.3d at 954 ("It is undisputed that text messaging is a form of communication used primarily between telephones."). Moreover, "[b]oth the FCC and the courts have recognized that the scope of the TCPA naturally evolves in parallel with telecommunications technology as it evolves, *e.g.*, with the advent of text messages." *Saunders v. Dyck O'Neal, Inc.*, 319 F. Supp. 3d 907, 911 (W.D. Mich. 2018). Indeed, in a 2015 ruling, the FCC stated, "[t]he TCPA's text and legislative history reveal Congress's intent to give the Commission broad authority to enforce the protections from unwanted robocalls as *new technologies emerge*." *Id*. (quoting *FCC 2015 Ruling*, 30 F.C.C. Rcd. 7961, 2015 FCC LEXIS 1586, at ¶¶ 113-15 (2015) (emphasis added)).

Application of these principles can be seen in district court's unanimous conclusion that "ringless" voicemail technology is a "call" covered under the TCPA even though the technology did not exist when the TCPA was enacted because the purpose – like text messages – is to communicate with a consumer via their telephone. Courts routinely apply the TCPA to evolving modalities that function as "calls," including ringless voicemail, because the statute protects the

21

privacy interest regardless of transmission path. *See, e.g., Grant v. Regal Auto. Grp.,* 2020 U.S. Dist. LEXIS 248347, at *11 (M.D. Fla. July 30, 2020) (collecting cases). That same principle easily encompasses texts in §227(c)'s DNC context.

The Court in *Wilson v. Skopos Fin., LLC*, 2025 U.S. Dist. LEXIS 138638, *10-13 (D. Or. July 21, 2025) denied an identical motion to dismiss holding:

> [T]he FCC's decision to include text messages is congruent with Congress's overarching goals for the TCPA. Congress enacted the TCPA "to address a growing number of telephone marketing calls and certain telemarketing practices thought to be an invasion of consumer privacy and even a risk to public safety." *2003 Rules & Reguls.*, 18 F.C.C. Rcd. at 14018. Section 227(c) specifically targets "the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." § 227(c)(1). With those goals in mind, the "basis" for the FCC's conclusion becomes abundantly clear: unsolicited text messages invade the privacy and disturb the solitude of their recipients. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017). They should therefore be included within the purview of the DNC Registry's protections. It cannot be argued in good faith that text messages are so categorially different from phone calls that the former cannot be considered an invasion of consumer privacy when directed at numbers on the DNC Registry.. . . On this point, Defendant is without support. The Court concludes that unsolicited text messages sent in violation of the DNC Registry can give rise to a cause of action under § 227(c)(5).

This Court should hold the same.

Defendant's request to exclude text messages from the protections afforded consumers under the TCPA also ignores that "the TCPA is a remedial statute, it should be construed to benefit consumers." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013); *see also Hooters of Augusta, Inc. v. Am. Global Ins. Co.*, 272 F. Supp. 2d 1365, 1376 (S.D. Ga. 2003) ("I find that § 227 is

a remedial statute."). In enacting the TCPA, Congress found that "[u]nrestricted telemarketing….can be an intrusive invasion of privacy." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). The outcome Defendant requests – allowing companies to spam consumers with unwanted text messages even after requests for the messages to stop – would result in harm that, again, Circuit courts have found is real and concrete. *See Drazen*, 74 F.4th at 1346 (11th Cir. 2023) ("we hold that the receipt of an unwanted text message causes a concrete injury"). Congress intended for the privacy protections of the TCPA to cover new technologies by leaving the term "call" undefined thereby allowing the statute to continue to protect consumers. This Court should, respectfully, reject Defendant's myopic interpretation of the statute that would render it moot.

## II.    In the alternative, Plaintiff should be granted leave to amend.

Should the Court determine that Plaintiff's text-message allegations alone are insufficient under § 227(c), Plaintiff respectfully requests leave to amend. Plaintiff has submitted a sworn declaration establishing that Defendant also placed repeated voice calls to her number while it was registered on the National Do Not Call Registry. *See* ECF No. 17-1. Because Rule 15(a)(2) instructs that leave to amend "shall be freely given when justice so requires," and amendment here would not be futile or prejudicial, Plaintiff should be permitted to amend to include those calls. See *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

## Conclusion

Defendant's theory would turn the National Do Not Call Registry into a relic—effective only for the fading subset of voice solicitations while leaving consumers defenseless against the very channel telemarketers now prefer. Nothing in the text, structure, or history of § 227(c) commands that result. To the contrary, Congress wrote broadly ("telephone call or message"), delegated deliberately (directing the FCC to adopt the rules "most effective and efficient" to protect residential privacy), and later reinforced the settled understanding that texts fall within the TCPA's ambit. The FCC, exercising the authority Congress gave it, has for decades implemented a coherent, technology-neutral regime that treats robotexts and robocalls alike—because both invade the same quiet of the home and the same privacy of the person.

Tradercodes asks this Court to create an atextual carve-out based on what technology was commonplace in 1991. But statutory meaning does not stand still simply because texting was nascent—or nonexistent—when the statute passed. The TCPA protects people from unsolicited *telephone solicitations*—communications pushed to their phones for the purpose of selling goods and services—whether those solicitations arrive with a ring tone or a buzz. Reading "call" one way for § 227(b) and another way for § 227(c) would fracture a unified statutory design, so w

24

confusion, and defy ordinary canons that identical terms carry identical meanings across a single enactment. And it would do so in the face of the FCC's reasoned, consistent judgment and Congress's subsequent ratification.

The practical stakes underscore the legal ones. If "call" excludes text, telemarketers can do in two pings what the statute forbids in two rings. Consumers who placed their numbers on a list expressly created to stop *telephone solicitations* would find that protection illusory for the medium they actually receive. That is not what Congress enacted, not what the FCC implemented, and not what the Eleventh Circuit and Supreme Court precedent—recognizing texts as calls and recognizing the concrete injury they inflict—permit.

The TCPA is remedial. It should be construed to preserve, not pare back, the privacy Congress sought to secure. This Court should reject Defendant's invitation to rewrite the statute and upend decades of settled practice. The better reading—the faithful reading—is also the sensible one: texts to numbers on the Do Not Call Registry are within § 227(c)'s protections. The motion should be denied in full so this case can proceed to discovery and adjudication on the merits. And, at a minimum, if the Court concludes any pleading amendment is necessary in light of the voice calls alleged and declared.

For these reasons, Plaintiff respectfully asks the Court to deny Defendant's Motion for Judgment on the Pleadings.

25

Date: September 16, 2025          */s/ Anthony Paronich*
                                  Anthony I. Paronich, *pro hac vice*
                                  Paronich Law, P.C.
                                  350 Lincoln Street, Suite 2400
                                  Hingham, MA 02043
                                  Tel: (617) 485-0018
                                  anthony@paronichlaw.com

                                  *Counsel for Plaintiff and the proposed class*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), counsel for Plaintiff certifies that the

foregoing document has been prepared with one of the font and point selections

approved by the Court in Local Rule 5.1(B). This filing was prepared using Times

New Roman, 14-point font.

                                  */s/ Anthony Paronich*

26