**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| ERIN WILSON, *individually and on behalf of others similarly situated,* | |
| Plaintiff, | Case No. 1:25-cv-03211-ELR |
| v. | |
| TRADERCODES, LLC DBA ALGO EXCHANGE, | |
| Defendant. | |

## DEFENDANT TRADERCODES, LLC D/B/A ALGO EXCHANGE'S REPLY IN FURTHER SUPPORT OF ITS RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS

NOW COMES Defendant Tradercodes, LLC d/b/a Algo Exchange ("Algo Exchange"), and files this reply brief in further support of its Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (the "Rule 12(c) Motion"). *See* Doc. Nos. 14, 14-1. Plaintiff's Opposition ignores controlling precedent and otherwise presents no meaningful argument to salvage her Complaint. Indeed, the beginning and end of the inquiry is, under controlling precedent, text messages are not "telephone calls" under 47 U.S.C. § 227(c) of the Telephone Consumer Protection Act of 1991 ("TCPA"). The Complaint fails to state a plausible claim for relief and must be dismissed with prejudice.

### I.    SUMMARY

1

Plaintiff alleges one claim under Section 227(c) of the TCPA based on her alleged receipt of two unsolicited text messages. Notwithstanding evidence another person may have mistakenly provided Plaintiff's telephone number when requesting information from Algo Exchange, Plaintiff's singular claim is exclusively based on two text messages. *See* Doc. No. 1 ¶¶16-21, 23, 54.

## ARGUMENT

### I.    Text Messages are <u>Not</u> Telephone Calls Under the TCPA.

The TCPA's language is clear, and thus the analysis begins and ends there. *Young v. Grand Canyon Univ., Inc.*, 980 F.3d 814, 818 (11th Cir. 2020). Yet, Plaintiff implores this Court to alter and rewrite the express language and statutory terms in the TCPA. Plaintiff's effort fail for several reasons. First, Plaintiff argues that this Court is not constrained to interpret the TCPA as written in 1991 because "nearly every court" has held text messages are calls pursuant to the TCPA. *See* Doc. No. 19, at 9. Plaintiff is wrong.

Contrary to any deference previously afforded to interpretations provided by administrative agencies like the Federal Communications Commission ("FCC"), the principles of statutory construction required by the Supreme Court's recent decisions in *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 145 S. Ct. 2006, 2015 (2025) and *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402 (2024) (overruling *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)), confirm

2

Section 227(c) of the TCPA does not apply to text messages. *See Jones v. Blackstone Med. Servs., LLC*, 2025 WL 2042764, at *3 (C.D. Ill. July 21, 2025) ("Pursuant to *McLaughlin* and *Loper Bright*, the Court agrees with the Defendant that based on a plain reading of the TCPA and its implementing regulations, Section 227(c)(5) does not apply to text messages."); *Davis v. CVS Pharmacy, Inc*., 2025 WL 2491195, at *1 (N.D. Fl. Aug. 26, 2025) ("Certainly, no ordinary person would think of a text message as a '*telephone* call.' This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case.") (emphasis original).

Under the Supreme Court's recent decisions, the TCPA's meaning was "fixed" when it was enacted in 1991. *Loper Bright*, 603 U.S. at 400 (quoting *Wisconsin Central Ltd. v. United States*, 585 U.S. 274, 284 (2018)). When enacted, the phrases "text message" and "SMS message" were and remain wholly absent from Section 227(c)(5) of the TCPA and its implementing regulations, 47 C.F.R. § 64.1200(c) and (d). *Jones*, 2025 WL 2042764, at *3. Only "call", "telephone call", and "artificial or prerecorded-voice telephone call" appear in Section 227(c) and its implementing regulations. *Id.* (citing 47 U.S.C. § 227(c)(1)(D), (c)(5); 47 C.F.R. § 64.1200(c)(2)(iii), (d)). Therefore, according to its plain and contemporary meaning, 47 U.S.C. § 227(c) cannot be interpreted to govern text messages. *Id.* at *4 (collecting authorities); *Equal Emp. Opportunity Comm'n v. Catastrophe Mgmt.*

*Sols.*, 852 F.3d 1018, 1026 (11th Cir. 2016); *Davis*, 2025 WL 2491195, at *3 (collecting authorities).  It is beyond doubt the ordinary meaning of a "text message" is not synonymous with a "telephone call."  *Davis*, 2025 WL 2491195 * 1.  That "is enough to end this case" at the pleading stage.  *Id.*

Second, Congress has made it abundantly clear it understands the difference between a telephone call and a text message, and when Congress wants to regulate both via one provision, it does so expressly.  *See* 47 U.S.C. § 227(e)(8)(A) and (B) (discussing caller ID in connection with "a call made using a voice service or text message sent using a text messaging service").

Third, the Supreme Court has rejected the argument that the TCPA is drafted to mold to changing technology.  *Facebook v. Duguid,* 592 U.S. 395, 409 (2021).  The Eleventh Circuit, along with other courts, also rejected any interpretation of the TCPA in any manner that overrides the plain text of the statute.  *Id*. ("This Court must interpret what Congress wrote …"); s*ee also, Ins. Mktg. Coal. Ltd., v. Fed. Commc'ns Comm'n*, 127 F.4th 303, 315 (11th Cir. 2025) ("Atextual good policy cannot overcome clear text … The FCC has no authority to dictate otherwise.") (collecting authorities).  It is for Congress to address the realities and differences in communication through various mediums of technology and any alleged intrusions caused.  *See Duguid*, 592 U.S. at 409 ("Duguid's quarrel is with Congress, which did not define an autodialer as malleably as he would have liked.")

Ultimately, as a matter of law, this Court cannot insert terms into Section 227(c) of the TCPA to make Plaintiff's claim plausible. This Court must confine itself to its assigned role which does not include legislating. In other words, the absence of the term "text message" cannot be changed because it is not for a court to legislate by "reading something into the TCPA something that is not there." *Jones*, 2025 WL 2042764, at *5. Because Plaintiff's Complaint is clear and relies solely upon two alleged text messages which are not "calls" pursuant to the section of the TCPA under which she sues, the Complaint fails to state a claim and must be dismissed.[1]

## II.    The TCPA has Not been Expanded to Text Messages.

The FCC, and not Congress, attempted to expand the TCPA to cover text messages. *Salcedo v. Hanna*, 936 F.3d 1162, 1166 (11th Cir. 2019), *abrogated on other grounds Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023). The Supreme Court recently made it clear, however, that courts owe the FCC's interpretations of the TCPA no deference and must apply the statute as written "at the time of enactment." *Loper Bright*, 603 U.S. at 392, 400 (internal quotations and citations omitted).

Plaintiff contends, nevertheless, the Supreme Court, Eleventh Circuit and

---

[1] Plaintiff filed a notice of supplemental authority, attaching *Bosley v. A. Bradley Hosp. LLC*, decided by the Southern District of Florida on September 19, 2025. *See* Doc. Nos. 21, 21-1. That case does not cite the Supreme Court decisions in *McLaughlin* and *Loper Bright*, and the parties did not reference those decisions in their briefing. That decision is irrelevant and contrary to Supreme Court precedent.

5

"every Circuit Court" have interpreted the TCPA to likewise cover text messages. *See* Doc. No. 19, at 9-10. Plaintiff is incorrect.

Relevant here is the Supreme Court has evaluated TCPA text message cases twice. Both cases addressed different provisions of the TCPA governing automatic telephone dialing systems, Sections 227(a) and (b), and not Section 227(c). *See Duguid*, 592 U.S. at 405; *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156-157 (2016). Further, in both cases, the parties *assumed* text messages were covered by those other Sections of the TCPA. *See Duguid*, 592 U.S. at 400 n.2 ("Neither party disputes that the TCPA's prohibition also extends to sending unsolicited text messages. . . . We therefore assume that it does without considering or resolving that issue."); *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) (noting neither party disputed whether a text message was a call). At the time of *Duguid* and *Campbell-Ewald*, the prevailing view was the FCC's interpretations and orders were beyond rebuke; therefore, there was no point to challenge them. This deference ended with the Supreme Court's holding in *McLaughlin*, which held courts are "not bound by the FCC's interpretation of the TCPA," but rather courts "should interpret the statute as courts traditionally do . . . ." *McLaughlin*, 145 S. Ct. at 2022-23.

Similarly, the Eleventh Circuit twice evaluated Article III standing in TCPA text message cases. *See Salcedo*, 936 F.3d at 1165; *Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023). Again, in both cases, without deciding the issue because it was not

raised by either party, the courts assumed text messages were covered by different provisions of the TCPA, not Section 227(c). *See Salcedo*, 936 F.3d at 1166; *Drazen*, 74 F.4th at 1343 n.5. The issue before the courts was standing, not the merits of the FCC's interpretation of text messages as telephone calls under different provisions of the TCPA. Whether "an unwanted text message causes a concrete injury" under different provisions of the TCPA does not provide a basis to determine whether a text message is a phone call under Section 227(c) of the TCPA. *Drazen*, 74 F.4th at 1345. Further, Plaintiff's assertion that the Eleventh Circuit has "interpreted" the term "call" to include text message is flatly wrong. *See* Doc. 19, at 9, citing *Ins. Mktg. Coal.*, 127 F.4th at 309. In *Ins. Mktg. Coal.*, the Court evaluated the term "prior express consent," not whether a "call" included text messages. The Court used the term "robocalls" as shorthand for "robocalls and robotexts," but clearly recognized they are different methods of communication. *Id.*, n. 2.

Many of the cases cited by Plaintiff from other non-controlling circuits which predate *McLaughlin* and *Loper Bright* are completely inapplicable to today's standard and, moreover, were **not** decided under Section 227(c). *See, Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946 (9th Cir. 2009) (recognizing it was the FCC that interpreted the TCPA to prohibit any call, including both voice and text call, using an automatic telephone dialing system (ATDS) or artificial or prerecorded message to any wireless telephone number). According to applicable precedent, text

messages are not "telephone calls" under Section 227(c) as a matter of law.

### III.    A Text Message is Not a Call Pursuant to Section 227(c)(5); thus, Receipt of a Text Message Does not Create a Private Right of Action.

Plaintiff makes a great effort to try to transform a text message into a "call" in order to claim she has a right to enforce the Do Not Call List regulations; but, Plaintiff's argument fails.  The Do-Not-Call Implementation Act does not amend the TCPA, much less alter the plain meaning of any term within the TCPA. *See* 15 U.S.C. §§ 6151, 6152; *Hadden v. United States*, 661 F.3d 298, 303 (6th Cir. 2011) ("But our task in this case is not to fashion a sort of judicial string theory, under which we develop universal principles that harmonize different statutes with different language.").

Plaintiff also conflates pre-*McLaughlin* caselaw regarding telephone solicitations to include any communications despite the lack of such terms in the TCPA section under which she sues here.  *Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643, 649 (4th Cir. 2019) (The TCPA allows a private right of action for violations of the Do-Not-Call registry regulations).  Fatal to Plaintiff's argument is that the Supreme Court has confirmed any interpretation or recognition by the FCC to include the term "text message" into the TCPA is not binding on this Court.

Plaintiff confirms the meaning of the term "call" is "especially clear in neighboring provisions," then, argues it should be applied despite the absence of

such a term in the operative provision here.  *See* Doc. No. 19, at 15.  This argument was specifically rejected by the Northern District of Florida which held Congress "defines 'telephone solicitation'—and whatever Congress directed the FCC to do in terms of regulating certain 'telephone call[s] or message[s]'—the private right of action Congress created exists only for those who received multiple 'telephone calls.' 47 U.S.C. § 227(c)(5)."  *See Davis*, 2025 WL 2491195 *2.  The *Davis* court emphasized: "In fact, Congress's use of the phrase 'telephone call or message' in a neighboring provision only undermines Davis's position.  It shows that Congress does not use the term 'telephone call' to encompass all 'messages.'" *Id*.

Rejecting the argument presented by Plaintiff here, the *Davis* court confirmed the term "telephone call" in § 227(c)(5) and the term "telephone call *or message*" in § 227(a)(4) are not analogous.  The *Davis* court explained "[courts must] presume that, when a statute uses one term in one place and a distinct term elsewhere, the difference matters—that is, the distinct words have different meanings." *Id*. (citing *Sunshine State Reg'l Ctr., Inc. v. Dir., U.S. Citizenship & Immigr. Servs.*, 143 F.4th 1331, 1344 (11th Cir. 2025); *accord Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 232 F.3d 854, 859 (11th Cir. 2000) ("[W]hen Congress uses different language in similar sections, it intends different meanings.")). At the end of the day, this Court cannot rewrite the section of the TCPA Plaintiff alleged was violated in order for the

claim to survive.  For this additional reason, Plaintiff's Complaint should be dismissed with prejudice.

## IV.    The "Standard of Review" Plaintiff Seeks is Incorrect and Ignores Supreme Court Precedent.

Plaintiff argues the FCC's interpretations should be evaluated under the Administrative Procedure Act's ("APA") deferential arbitrary-and-capricious standard and, under that standard, the FCC did not act unreasonably or inconsistent with the statute when it extended the TCPA's protection to texts.  *See* Doc. No. 19, at 23. Plaintiff asserts this argument in a vain effort to distinguish the holding from the *Davis* court, claiming the court applied the "wrong" standard of review and instead relied on *McLaughlin. Id*.  Plaintiff's argument misstates applicable law and invites reversible error.

The APA, 5 U.S.C. § 551 *et seq*., "makes clear that agency interpretations of statutes ... are not entitled to deference." *Loper Bright*, 144 S. Ct. at 2261.  It is the responsibility of the reviewing court "to decide whether the law means what the agency says." *Id.* (internal quotation marks omitted).  Under the APA, courts "shall ... hold unlawful and set aside agency action, findings, and conclusions found to be ... not in accordance with law" or "in excess of statutory ... authority."  5 U.S.C. § 706(2)(A), (C).   Thus, in determining "whether an agency has acted within its statutory authority, as the APA requires," this Court "must exercise [its] independent judgment." *Loper Bright*, 144 S. Ct. at 2273.

10

Contrary to Plaintiff's argument, the "command of the APA [is] that 'the reviewing court'—not the agency whose action it reviews—is to 'decide all relevant questions of law' and 'interpret ... statutory provisions.'" *Loper Bright*, 603 U.S. at 398 (emphasis in original). The Courts are the final authority on statutory construction. *Id*., at 401. The APA does not call for this Court to determine whether the FCC acted unreasonably or inconsistent with the TCPA. Rather, as confirmed by the Supreme Court, this Court must determine whether the term "telephone call" includes "text messages" based on the statutory language in the TCPA.

When making this determination, the Court will find that Congress expressly did not include text message in the term "telephone call" in § 227(c)(5) and did not expressly give the FCC authority to define that term in any other manner. *Loper Bright*, 603 U.S. at 394 (quoting *Batterton v. Francis*, 432 U.S. 416, 425 (1977)) (Agencies give meaning to a particular statutory term only when so "expressly delegated" to do so by statute.). Any inclusion of the term "text message" into "telephone call" by the FCC was outside any statutory authority provided by Congress. The *Davis* court rightfully interpreted the TCPA by its plain meaning when finding the exclusion of the term "text message" from the term "telephone call" was enough to end the discussion. *Davis*, 2025 WL 2491195 * 1.

## V.    Plaintiff Should Be Denied Leave to Amend Her Complaint.

The liberal amendment policy prescribed by Rule 15(a) is not an automatic

11

right and does not mean leave will be granted in all cases. *Cowart v. Metro. Life Ins. Co*., 444 F. Supp. 2d 1282, 1295 (M.D. Ga. 2006) (internal citations omitted). Motions for leave to amend are properly denied where there is a finding of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment." *Id.* (citing, *McKinley v. Kaplan*, 177 F.3d 1253, 1258 (11th Cir.1999)) (internal quotations omitted.)

Plaintiff confirmed no amendments to her Complaint were necessary in Section 6(a) of the parties' Joint Preliminary Report and Discovery Plan filed on August 1, 2025. *See* Doc. No. 12, at 7. Indeed, Plaintiff agreed any proposed amendments submitted thirty (30) days after the Plan was filed "will not be accepted for filing, unless otherwise permitted by law." *See Id*. That time has come and gone.

Plaintiff has also not filed a motion for leave to amend her Complaint (*see* LR 7), and her request for leave as an alternative to dismissal in her Opposition is improper. *See Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.").

Assuming *arguendo*, Plaintiff's request for leave is considered in any way, which would be improper, the request fails to meet the requisite standard required to

amend a pleading and any subsequent attempt to file a motion for leave is futile. Specifically, when a party's motion to amend is filed after the deadline for such motions, as delineated in the court's scheduling order, the party must show good cause why leave to amend the complaint should be granted. *Smith v. Sch. Bd. of Orange Cnty.*, 487 F.3d 1361, 1366 (11th Cir. 2007) (citing Fed. R. Civ. P. 16(b); *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998)). "To do otherwise 'would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure.'" *E.E.O.C. v. Exel Inc.*, 259 F.R.D. 652, 654 (N.D. Ga. 2008) (quoting *Sosa*, 133 F.3d at 1419). "A finding of lack of diligence on the part of the party seeking modification [of a scheduling order] ends the good cause inquiry...." *Lord v. Fairway Elec. Corp.*, 223 F. Supp. 2d 1270, 1277 (M.D. Fla. 2002) (citing *Sosa,* 133 F.3d at 1418).

Only when facing Defendant's Rule 12(c) Motion, Plaintiff submitted an improper declaration in opposition to Defendant's Motion to Stay that, for the first time, refers to purported telephone calls she claims to have received. *See* Doc. No. 17-1. The allegations Plaintiff asserts to attempt to save her TCPA claim, if true, were known and available to her prior to filing her Complaint. Specifically, her declaration alleges she received phone calls on April 25, April 28, and April 29, 2025. *See* Doc. No. 17-1, at 2-3. Plaintiff filed her Complaint six weeks later on

June 9, 2025. *See* Doc. No. 1. But, only now, months later, does Plaintiff assert in her declaration she received "telephone calls," after the deadline to amend had lapsed and facing dismissal because the alleged text messages on which she based her claim are insufficient to state a plausible claim under the TCPA. *Sanchez v. H & R Maint., L.C.*, 294 F.R.D. 677, 679 (S.D. Fla. 2013) (denial of leave to amend to add additional parties of which plaintiff was aware prior to filing her original complaint.)

The Eleventh Circuit affirmed the denial of leave to amend where the plaintiff sought to raise an issue for the first time after the defendant moved for summary judgment, noting "all of the facts relevant to the proposed amendment were known to the appellant at the time she filed her original complaint." *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008) (citing, *Layfield v. Bill Heard Chevrolet Co.*, 607 F.2d 1097, 1099 (5th Cir.1979) (per curiam)). The Eleventh Circuit does not lightly regard "the duty of an attorney to prepare a case properly and to give the issues full consideration before preparing pleadings." *Reese,* 527 F.3d at 1264.

Due to the failure to file a motion for leave to amend her Complaint, the insertion of the request in the Opposition is improper and should be disregarded. Further, any attempt to seek leave is futile. If Plaintiff filed a motion for leave, it would be presented after the deadline set by this Court. Plaintiff has failed to show good cause for this Court to grant leave to amend, and any "new allegations" were known and available to Plaintiff prior to filing her original Complaint.

## CONCLUSION

Section 227(c) and its implementing regulations, when read according to their plain and contemporary meaning, do not extend to text messages. Courts are not free to expand a statute's scope to reach technologies Congress did not address. That responsibility lies with Congress alone. Therefore, Plaintiff's claim fails as a matter of law. Further, Plaintiff should not be granted leave to amend her Complaint after the deadline with information she cannot deny she was aware of and had available prior to filing her Complaint. Accordingly, Defendant respectfully requests that the Court enter judgment on the pleadings and dismiss the Complaint with prejudice.

Dated: September 30, 2025                        Respectfully submitted,

                                GORDON REES SCULLY
                                MANSUKHANI, LLP
                                */s/ Theresa L. Nelson*
                                Theresa L. Nelson (GA Bar No. 601095)
                                Gordon Rees Scully Mansukhani, LLP
                                55 Ivan Allen Jr. Blvd. N.W.
                                Suite 750
                                Atlanta, GA 30308
                                Ph.:  (404) 869-9054
                                Email: tlnelson@grsm.com

                                Stephen R. Freeland (*pro hac vice*)
                                277 S. Washington St.
                                Suite 550
                                Alexandria, VA 22314
                                Ph.:  (703) 650-7035
                                Email:  sfreeland@grsm.com

                                *Attorneys for Defendant*

15

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and complete copy of the foregoing and accompanying Exhibit 1 have been served through the Court's electronic filing system to the following on September 30, 2025:

Valerie Chinn
Attorney at Law
CHINN LAW FIRM, LLC
245 N. Highland Ave.
Suite 230 #7
Atlanta, GA 30307
Direct: 404-955-7732
Facsimile: 404-745-8605
Email: vchinn@chinnlawfirm.com

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
anthony@paronichlaw.com
*Counsel for Plaintiff and the proposed class*

/s/ *Theresa L. Nelson*
Theresa Nelson