UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHET MICHAEL WILSON,<br><br>    Plaintiff,<br><br>v.<br><br>MEDVIDI INC,<br><br>    Defendant. | Case No. 5:25-cv-03996-BLF<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>[Re: ECF No. 14] |

Before the Court is Defendant MEDVIDI Inc.'s motion to dismiss Plaintiff Chet Michael Wilson's complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 14 ("Mot."). Plaintiff filed an opposing brief, and Defendant filed a reply. ECF No. 26 ("Opp."); ECF No. 27 ("Reply"). The Court concludes that the motion is suitable for adjudication without oral argument and VACATES the hearing scheduled for October 23, 2025. *See* Civ. L.R. 7-1(b).

For the reasons below, Defendant's motion is GRANTED WITH LEAVE TO AMEND.

**I. BACKGROUND**

On May 7, 2025, Plaintiff filed this instant two-count class action complaint against Defendant alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5), and implementing regulations 47 C.F.R. 64.1200(c), (d). ECF 1 ("Compl."). Plaintiff alleges that he registered his phone number on the National Do Not Call Registry, did not consent to receive calls from Defendant, and received multiple telemarketing text messages from Defendant in 2022 and 2024. *Id.* ¶¶ 18–22. Defendant alleges that he continued to receive text messages even after replying "STOP" in 2022. *Id.* ¶ 22.

Count I of the complaint alleges that Defendant violated the TCPA by making

1  telemarketing calls to numbers on the Do Not Call Registry under 47 C.F.R. 64.1200(c)(2).  *Id.*
2  ¶ 39.  Count II of the complaint alleges that that Defendant violated the TCPA by "sending
3  telemarketing calls, except for emergency purposes, to Plaintiff and members of the Internal Do
4  Not Call Class despite previously requesting that such calls stop."  *Id.* ¶ 44.

## II.  LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) "if the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim."  *Sinclair v. City of Seattle*, 61 F.4th 674, 678 (9th Cir. 2023).  The task when ruling on a motion to dismiss "is to evaluate whether the claims alleged [plausibly] can be asserted as a matter of law."  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).  The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.

Upon granting a motion to dismiss for failure to state a claim, a court has discretion to allow leave to amend the complaint pursuant to Rule 15(a).  "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment."  *Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  In deciding whether to grant leave to amend, the Court considers the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003).  The Ninth Circuit in *Eminence Capital* identified several factors to consider, including (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment.  *Id.* at 1052.

## III.  DISCUSSION

Defendant argues that section 227(c)(5) does not cover text messages, and that even if it did cover them, Plaintiff has not sufficiently pleaded factual allegations establishing direct or vicarious liability under the TCPA.  The Court considers each argument in turn.

**A. Regulation of Text Messages Under Section 227(c)**

The TCPA prohibits certain unsolicited telephone solicitations, including calls using automatic telephone dialing systems, *see* 47 U.S.C. § 227(b), and calls sent to residential telephone subscribers who have registered their phone numbers on the national Do Not Call registry, *see id.* § 227(c). The TCPA authorizes the Federal Communications Commission ("FCC") to prescribe regulations implementing the requirements of its prohibitions. *Id.* § 227(b)(2), (c)(2). Section 227(c) creates a private right of action for any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." *Id.* § 227(c)(5). 47 C.F.R. § 64.1200(c) prohibits the initiation of telephone solicitations to residential telephone subscribers who have registered their telephone numbers on the national do-not-call registries maintained by the federal government, and 47 C.F.R. § 64.1200(d) prohibits the initiation of "any artificial or prerecorded-voice telephone call pursuant to [enumerated exemptions] . . . unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls."

Defendant argues that section 227(c) does not apply to text messages because the phrases "text message" and "SMS" message do not appear in the statutory text, asserting that Congress's choice to use the terms "telephone call" and "artificial or prerecorded-voice telephone call" manifest an affirmative intent to preclude liability for text messages. Mot. at 8. The Court disagrees. As a preliminary matter, it is unsurprising that the statute does not use the term "text message" because, as Plaintiff points out, the statute was enacted in 1991, before the first-ever text message was sent in 1992. *See Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015). In determining whether section 227(c) applies to text messages, the Court looks to the plain meaning of the text rather than the specific facts or technology that Congress may have had in mind in 1991 at the time of the TCPA's passage. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998).

Construing the provisions of a statute requires the Court to begin with its language—the inquiry begins and ends with the text if it is clear and unambiguous. *McDonald v. Sun Oil Co.*,

3

548 F.3d 774, 780 (9th Cir. 2008). The TCPA itself does not define the term "call," which is a "request, demand, or command, [especially] to come or assemble." Call, Black's Law Dictionary (12th ed. 2024). This definition makes clear that a "call" is distinguished from other communications such as a "lesson" or "message" by the meaning it conveys, not the form it takes. The Ninth Circuit has already held that the term refers to both oral and written communications. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953–54 & n.3 (9th Cir. 2009) (explaining that the "ordinary, contemporary, common meaning" of the "call" is "to communicate or try to get into communication with a person by a telephone" (internal quotation marks and citation omitted)).[1]

This common-sense interpretation is confirmed by the purpose and structure of the TCPA, which was enacted to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile machines and automatic dialers." S. Rep. No. 102-178, at 1 (1991). The core of section 227(c) is its prohibition of certain "telephone solicitations," which are defined by the statute as "the initiation of a telephone call or message *for the purpose of* encouraging the purchase or rental of[] . . . property, goods, or services." 47 U.S.C. § (a)(4), (c)(1) (emphasis added). This language makes clear that Congress was more concerned with the purpose of the telephone communications it proscribed in the TCPA than the form in which those communications are transmitted. *See Abboud v. Circle K Stores Inc.*, 731 F. Supp. 3d 1094, 1102 (D. Ariz. 2024) ("The purpose of a text or call determines whether it qualifies as a telephone solicitation[.]").

Given Congress's stated goal "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object," 47 U.S.C. § 227(c)(1), it strains belief to suggest that Congress silently determined that such oral messages were more invasive or objectionable than written ones. *See also Los Angeles Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795,

---

[1] The *Satterfield* court's conclusion was based in part on *Chevron* deference. *Id.* at 1041. Although *Chevron* has since been overruled, the Supreme Court has instructed that precedents relying on *Chevron* remain fully intact. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024).

4

1    799 (9th Cir. 2017) ("When Congress passed the [TCPA] it sought to protect individuals against

2    invasions of privacy, in the form of unwanted calls (and now text messages) using automatic

3    telephone dialing systems."). Defendant's invitation to inject a distinction between written and

4    oral telephone solicitations is contrary both to the remedial bent of the TCPA and precedent. *See,*

5    *e.g.*, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular

6    telephone, it is undisputed, qualifies as a 'call' . . . ."); *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983,

7    985–86 (9th Cir. 2023) ("We have held that the receipt of unsolicited phone calls or text messages

8    in violation of the TCPA is 'a concrete injury in fact sufficient to confer Article III standing.'"

9    (citation omitted)); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017)

10   ("Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and

11   disturb the solitude of their recipients."); *Brickman v. Facebook, Inc.*, 230 F. Supp. 3d 1036, 1040

12   (N.D. Cal. 2017) ("A text message is a 'call' within the meaning of the TCPA.").

13       Defendant nonetheless seeks to overcome the plain meaning of the statute by suggesting

14   that the FCC, in implementing regulations pursuant to its section 227(b) authority to proscribe

15   certain calls made using automatic telephone dialing systems, somehow ratified Defendant's

16   interpretation of the term "call" in section 227(c) as being limited to voice calls. Mot. at 8. In 47

17   C.F.R. § 64.1200(a)(9), the FCC specifically explained that "the term 'call' includes a text

18   message, including a short message service (SMS) call." According to Defendant, "by limiting

19   this definition and intent to regulate text messages outlined in Section 64.1200(a), the FCC clearly

20   indicated that, unless otherwise specified, a 'call' does not include a 'text message' or 'SMS

21   message.'" Mot. at 8. This tortured reasoning provides no basis to depart from the plain meaning

22   of the statutory text as it has been understood by consumers, the FCC, and courts since the

23   TCPA's passage.

24       To begin with, the Court disagrees with the premise that, by defining "call" with reference

25   to section 227(b) the FCC somehow signaled its position that the term "call" has a different

26   meaning in section 227(b) and section 227(c), an interpretation which in any case would be

27   disfavored by failing to give consistent meaning to the same term. *See United States v. Paulson*,

28   68 F.4th 528, 555 (9th Cir. 2023) ("[A] word or phrase is presumed to bear the same meaning

throughout a text . . . ."). Moreover, it is unsurprising that the FCC first articulated its interpretation of "call" with reference to section 227(b) because that provision, which relates to autodialer and robocall prohibitions, uses the standalone term "call" much more extensively. It makes sense that the FCC first defined the term "call" with respect to section 227(b) because the term is more directly relevant. In any case, even if the FCC had intended to make this distinction, it could not rewrite the statute contrary to the text's plain meaning—as the Supreme Court has recently instructed, courts have an independent constitutional duty to construe the terms of the TCPA independent of the FCC's regulations. *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 162 (2025).

In short, nothing in the text, structure, or purpose of the TCPA suggests the distinction between written and oral communications that Defendant urges the Court to adopt. The Court concludes that a "telephone call" as used in 47 U.S.C. § 227(c) encompasses the types of text messages Plaintiff complains of.

### B. Allegations Set Forth in the Complaint

To state a claim under the TCPA, a plaintiff must allege that "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs.*, LLC, 707 F.3d 1036, 1043 (9th Cir. 2012). A plaintiff establishes direct liability under the TCPA by pleading that the defendant itself actually sent the offending telephone communication. *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877 (9th Cir. 2014), *aff'd*, 577 U.S. 153 (2016). On the other hand, "[a] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship . . . between the defendant and a third-party caller." *Id.* at 879. Defendant argues that the factual allegations contained in the complaint fail to plausibly establish that Defendant sent the text messages directly or through a third party. Mot. at 10–11. The Court agrees.

The complaint does not plead sufficient facts to plausibly allege that Defendant was the party directly responsible for sending the alleged improper communications. Despite Plaintiff's conclusory allegation that the text messages were sent by Defendant, *see* Compl. ¶ 19, the

complaint provides no factual details plausibly suggesting that Defendant actually sent them. There is no discussion, for example, of any investigation Plaintiff conducted to form the understanding that Defendant operated the separate phone numbers from which these messages were sent. Similarly, while alleging that "Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA," *id.* ¶ 39, the complaint fails to allege any agency relationship or identify any third parties that could have sent the text messages. Such "unadorned labels" are insufficient as a matter of law to allege any agency relationship. *Armstrong v. Investor's Bus. Daily, Inc.*, No. 18-cv-182134-MFW, 2018 WL 6787049, at *1 (C.D. Cal. Dec. 21, 2018).

Agreeing with Defendant that the complaint fails to allege direct or vicarious liability, the Court turns to Defendant's argument that the complaint should be dismissed without leave to amend. Mot. at 12. Defendant argues that "granting leave to amend would be futile as there is no indication that Plaintiff could cure these fundamental deficiencies through further amendment." *Id.* at 13. The Court disagrees. While the Court finds that amendment would be futile if the Court had agreed with Defendant's first argument that section 227(c) does not apply to text messages, for the reasons above, the Court concludes that section 227(c) does apply to text messages. Amending the complaint to provide additional factual allegations concerning the circumstances in which the text messages were sent and the identities of any third parties may be sufficient to state a claim for relief under TCPA and would assist the parties in clarifying the legal issues in this case. Moreover, there is no indication of any undue delay, bad faith on the part of Plaintiff, or undue prejudice to Defendant, and this would be the first time Plaintiff has amended the complaint.

### IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Defendant's motion to dismiss is GRANTED.

(2) The complaint is DISMISSED WITH LEAVE TO AMEND. Defendant shall have twenty-eight days from the date of this order to file an amended complaint. Amendment is limited to curing the factual deficiencies identified in this order. No

new claims or parties may be added without leave of court.

Dated: October 7, 2025

_____
BETH LABSON FREEMAN
United States District Judge

8