# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| ERIN WILSON, *individually and on behalf of others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>TRADERCODES, LLC DBA ALGO EXCHANGE,<br><br>Defendant. | Case No. 1:25-cv-03211-ELR |

### DEFENDANT TRADERCODES, LLC D/B/A ALGO EXCHANGE'S RESPONSE TO PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY AND ALGO EXCHANGE'S SUBMISSION OF ADDITIONAL SUPPLEMENTAL AUTHORITY

Defendant Tradercodes, LLC d/b/a Algo Exchange ("Algo Exchange"), by counsel, respectfully submits this Response to Plaintiff's Notice of Supplemental Authority, Doc. No. 23, wherein Plaintiff submitted *Wilson v. Medvidi, Inc.*, 2025 WL 2856295 (N.D. Cal. Oct. 7, 2025), in further support of Plaintiff's Opposition to Algo Exchange's Motion for Judgment on the Pleadings.

Algo Exchange submits *El Sayed v. Naturopathica Holistic Health, Inc.*, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025) as additional supplemental authority, attached hereto as Attachment 1, in further support of its Motion for Judgment on the Pleadings. (Doc. 14, 14-1, 22.)

Any reliance on *Medvidi* invites error because it relies on opinions predicated on agency deference under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), despite the Supreme Court's recent decisions overruling *Chevron*. *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 145 S. Ct. 2006, 2015 (2025) and *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402 (2024).

The *Medvidi* court did not conduct the post-*Chevron* era analysis required under *Loper Bright* and *McLaughlin*. Instead, the Court leaned on *Satterfield v. Simon & Schuster*, a Ninth Circuit case from 2009 built on *Chevron* deference, to find that the purpose and structure of the TCPA includes regulating text messages, even though text messages were not invented at the time of the statute's enactment. *Medvidi*, 2025 WL 2856295, at *2 (citing *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953–54 & n.3 (9th Cir. 2009)). The *Medvidi* court suggested, in a footnote, that *Chevron*-based precedents remain intact, even after *Loper Bright*. *Id.*, n. 1 (citing *Loper Bright*, 603 U.S. at 412). This statement is correct as to how those cases were decided *as to the parties* in *those* cases. It is incorrect on a going-forward basis after *Loper Bright* and *McLaughlin* with respect to parties in *current* litigation. Any other interpretation would turn the holdings in *Loper Bright* and *McLaughlin* on their respective heads.

This is made clear by the majority's discussion of *stare decisis* and Justice Gorsuch's concurrence in *Loper Bright*. Specifically, the portion of *Loper Bright*

cited, but not discussed in *Medvidi*, provided as follows:

> By [overturning *Chevron*], however, we do not call into question prior cases that relied on the *Chevron* framework. The holdings of those cases that specific agency actions are lawful—including the Clean Air Act holding of *Chevron* itself—are still subject to statutory *stare decisis* despite our change in interpretive methodology. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 457, 128 S.Ct. 1951, 170 L.Ed.2d 864 (2008). Mere reliance on *Chevron* cannot constitute a "'special justification'" for overruling such a holding, because to say a precedent relied on *Chevron* is, at best, "just an argument that the precedent was wrongly decided." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 266, 134 S.Ct. 2398, 189 L.Ed.2d 339 (2014) (quoting *Dickerson v. United States*, 530 U.S. 428, 443, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000)). That is not enough to justify overruling a statutory precedent.

*Loper Bright*, 603 U.S. at 412.

In his concurrence, Justice Gorsuch made clear those prior decisions applied to the parties in those cases, not to judges and parties in future cases:

> [A] past decision *may bind the parties to a dispute*, *but it provides this Court **no** authority in future cases to depart from what the Constitution or laws of the United States ordain*. Instead, the Constitution promises, the American people are sovereign and they alone may, through democratically responsive processes, amend our foundational charter or revise federal legislation.

*Id.* at 423 (Gorsuch, J., concurring) (emphasis added).

Thus, *Medvidi* provides no support for Plaintiff's position because it ignores the Supreme Court's directive that statutory meaning is fixed at enactment, and it is the job of the Courts, not an agency, to interpret the language of a federal statute. *Loper Bright*, 603 U.S. at 392, 400 (courts owe the FCC's interpretations of the

TCPA no deference and must apply the statute as written "at the time of enactment.").

Under the legally correct analysis, a "call" does not include a text message under Section 227(c) of the TCPA. This is confirmed by another recent decision within the Eleventh Circuit, *El Sayed v. Naturopathica Holistic Health, Inc.*, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025). In compliance with *Loper Bright* and *McLaughlin*, the Middle District of Florida held a text message is not a "call" under Section 227(c) of the TCPA:

> Contrary to El Sayed's contention that a natural reading of the term "telephone call" includes a "text message," "it is only though the rulemaking authority of the FCC that the voice call provisions of the TCPA have been extended to text messages." *Salcedo v. Hanna*, 936 F.3d 1162, 1169 (11th Cir. 2019), *abrogated on other grounds by Drazen v, Pinto*, 74 F.4th 1336 (11th Cir. 2023). However, a "District Court is not bound by the FCC's interpretation of the TCPA." *McLaughlin[]*, 606 U.S. at 168. Rather, "a district court must independently determine for itself whether the agency's interpretation of a statute is correct. District courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation." *McLaughlin[]*, 606 U.S. at 155 (citing *Loper Bright []*, 603 U.S. 369, 402 (2024)).

*Naturopathica*, 2025 WL 2997759 at *1. Consistent with the holdings in *Jones v. Blackstone Med. Servs., LLC*, 2025 WL 2042764, at *3 (C.D. Ill. July 21, 2025) and *Davis v. CVS Pharmacy, Inc.*, 2025 WL 2491195, at *1 (N.D. Fla. Aug. 26, 2025), cited by Algo Exchange in its Motion for Judgment on the Pleadings, Doc. Nos. 14, 14-1, 22, the *Naturopathica* court held that text messages are *not* covered by Section

227(c) of the TCPA. Indeed, the *Naturopathic* court adopted the *Davis* holding from the Northern District of Florida in its entirety:

> Although some judges differ, I agree with and adopt Judge Winser's opinion that "the statutory text here is clear, and a text message is not a 'telephone call.'" *Davis*, 2025 WL 2491195 at *1. In addition to the fact that in common American English usage, a "telephone call" and a "text message" are separate and distinct forms of communication, the term "text message" appears elsewhere in the TCPA and related amendments, an appearance that confirms Congress understood the pertinent distinction and legislated mindful of the distinction. *See* Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, div. P, § 503(a) (codified at 47 U.S.C. §§ 227(e)(8)(A)–(B)) (distinguishing between "a call made using a voice service" and "a text message sent using a text messaging service"). "[W]hen Congress uses different terms, we expect that they hold different meanings, especially when the same meaning would render one of the terms superfluous." *Fernandez v. Seaboard Marine Ltd.*, 135 F.4th 939, 958 (11th Cir. 2025) (citing *Pulsifer v. United States*, 601 U.S. 124, 149 (2024)). The omission of "text message" from paragraph 227(c)(5) confirms that the provision applies only to a "telephone call."

*Naturopathica*, 2025 WL 2997759 at *2; *Davis*, 2025 WL 2491195, at *1 ("Certainly, no ordinary person would think of a text message as a '*telephone* call.' This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case.").

For the foregoing reasons, Defendant respectfully submits the *Medvidi* case submitted as supplemental authority by Plaintiff relies on cases that are inapplicable in light of recent Supreme Court decisions. Additionally, the recent decision from the Middle District of Florida in *Naturopathica*, attached hereto as Attachment 1,

further confirms a text message is not subject to Section 227(c) of the TCPA.

Dated: October 31, 2025						Respectfully submitted,

GORDON REES SCULLY MANSUKHANI, LLP

*/s/ Theresa L. Nelson*
Theresa L. Nelson (GA Bar No. 601095)
Gordon Rees Scully Mansukhani, LLP
55 Ivan Allen Jr. Blvd. N.W.
Suite 750
Atlanta, GA 30308
Ph.: (404) 869-9054
Email: tlnelson@grsm.com

Stephen R. Freeland (*pro hac vice*)
277 S. Washington St.
Suite 550
Alexandria, VA 22314
Ph.: (703) 650-7035
Email: sfreeland@grsm.com

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I certify that a true and complete copy of the foregoing and accompanying Attachment 1 have been served through the Court's electronic filing system to the following on October 31, 2025:

Valerie Chinn
Attorney at Law
CHINN LAW FIRM, LLC
245 N. Highland Ave.
Suite 230 #7
Atlanta, GA 30307
Direct: 404-955-7732
Facsimile: 404-745-8605
Email: vchinn@chinnlawfirm.com

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
anthony@paronichlaw.com
*Counsel for Plaintiff and the proposed class*

/s/ *Theresa L. Nelson*
Theresa L. Nelson

WESTLAW

**2025 WL 2997759**
Only the Westlaw citation is currently available.
United States District Court, M.D. Florida.

ALIANA EL SAYED, Individually and on behalf of all others similarly situated Plaintiff,
v.
NATUROPATHICA HOLISTIC HEALTH, INC., et al, DEFENDANTS.

CASE NO. 8:25-cv-00847-SDM-CPT
|
10/24/2025

**ORDER**

**\*1** Alleging violations of the Telephone Consumer Protection Act (TCPA), Ali-ana El Sayed, in a prospective class action, sues (Doc. 9) Naturopathica Holistic Health, Inc., and Naturopathica's CEO, Catherine M. O'Brien. The defendants move (Doc. 13) to dismiss and El Sayed responds. (Doc 14)

Naturopathica sent to El Sayed a promotional text message to which El Sayed responded "STOP" on February 1, 2022. (Doc. 9 at ¶ 9) Despite receiving an auto-mated response ("You are now unsubscribed from all Naturopathica SMS marketing messages and will receive no further messages."), El Sayed received an additional promotional text message from Naturopathica on April 23, 2023, and another on April 30, 2023. (Doc. 9 at ¶ 10) When El Sayed received each text message, her num-ber was on the "National Do-Not-Call Registry." (Doc. 9 at ¶ 10)

El Sayed sues under the TCPA, which provides a "private right of action" for a "person who has received more than one telephone call within any 12-month pe-riod by or on behalf of the same entity in violation of the regulations prescribed un-der this subsection." 47 U.S.C. § 227(c)(5); *see also* 47 C.F.R. § 64.1200(d). Relying on a 2003 Order" issued by the Federal Communications Commission, El Sayed ar-gues that paragraph 227(c)(5) of the TCPA, although textually limited to "telephone call[s]," includes text messages. *In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 FCC Rcd. 14014 (The TCPA "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls.").

Contrary to El Sayed's contention that a natural reading of the term "tele-phone call" includes a "text message," "it is only though the rulemaking authority of the FCC that the voice call provisions of the TCPA have been extended to text mes-sages." *Salcedo v. Hanna,* 936 F.3d 1162, 1169 (11th Cir. 2019), *abrogated on other grounds by Drazen v. Pinto,* 74 F.4th 1336 (11th Cir. 2023). However, a "District Court is not bound by the FCC's interpretation of the TCPA." *McLaughlin Chiropractic Asso-ciates, Inc. v. McKesson Corporation,* 606 U.S. 146, 168 (2025). Rather, "a district court must independently determine for itself whether the agency's interpretation of a stat-ute is correct. District courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory inter-pretation." *McLaughlin Chiropractic,* 606 U.S. at 155 (citing *Loper Bright Enterprises v. Raimondo,* 603 U.S. 369, 402 (2024)).

"In interpreting a statute, we start with the plain language of the provisions to be interpreted." *Pugliese v. Pukka Dev., Inc.,* 550 F.3d 1299, 1303 (11th Cir. 2008). "[U]nless otherwise defined, words will be interpreted as taking their ordinary, con-temporary, common meaning." *Perrin v. United States,* 444 U.S. 37, 42. "The canons of construction often play a prominent role in that endeavor, serving as useful tools to discern that ordinary meaning." *Heyman v. Cooper,* 31 F.4th 1315, 1319 (11th Cir. 2022) (cleaned up). "But if the text is clear, the analysis begins and ends there." *Davis v. CVS Pharmacy, Inc.,* 2025 WL 2491195, at \*1 (Winser, J.) (N.D.Fla., 2025) (citing *Young v. Grand Canyon Univ., Inc.*, 980 F.3d 814, 818 (11th Cir. 2020)).

**\*2** Although some judges differ, I agree with and adopt Judge Winser's opinion that "the statutory text here is clear, and a text message is not a 'telephone call.' " *Da-vis,* 2025 WL 2491195 at \*1. In addition to the fact that in common American Eng-lish usage, a "telephone call" and a "text message" are separate and distinct forms of communication, the term "text message" appears elsewhere in the TCPA and related amendments, an appearance that confirms Congress understood the pertinent dis-tinction and legislated mindful of the distinction. *See* Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, div. P, § 503(a) (codified at 47

**ALIANA EL SAYED, Individually and on behalf of all others..., Slip Copy (2025)**

2025 WL 2997759

U.S.C. §§ 227(e)(8)(A)–(B)) (distinguishing between "a call made using a voice service" and "a text message sent using a text messaging service"). "[W]hen Congress uses different terms, we expect that they hold different meanings, especially when the same mean-ing would render one of the terms superfluous." *Fernandez v. Seaboard Marine Ltd.*, 135 F.4th 939, 958 (11th Cir. 2025) (citing *Pulsifer v. United States*, 601 U.S. 124, 149 (2024)). The omission of "text message" from paragraph 227(c)(5) confirms that the provision applies only to a "telephone call."

Also, El Sayed fails to adequately plead O'Brien's personal liability. "[P]er-sonal liability of an officer under the TCPA should be the exception rather than the rule." *Appelbaum v. Rickenbacker Grp., Inc.*, 2013 WL 12121104, at *3 (Ryskamp, J.) (S.D. Fla. 2013). As CEO of Naturopathica, O'Brien "is not liable unless [s]he com-mitted, directly participated in, or otherwise authorized the commission of wrongful acts within the scope of [her] employment." *Mais v. Gulf Coast Collection Bureau, Inc.*, 2013 WL 1283885, at *4 (Scola, J.) (S.D. Fla. 2013). "Some showing of intentional misconduct or gross failure to implement policies that comply with the TCPA should be required." *Appelbaum*, 2013 WL 12121104, at *3. The complaint alleges only that O'Brien "personally participated in and/or directed and authorized" the text mes-sages (Doc. 1 at ¶ 21); but "there conclusory statements" cannot survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The defendants' motion to dismiss is **GRANTED**. No later than **NOVEM-BER 14, 2025**, El Sayed may amend the complaint.

El Sayed is reminded that all papers must comply with the Local Rules of the Middle District of Florida, https://www.flmd.uscourts.gov/local-rules, including Rule 1.08. Failure to comply with the Local Rules will result in an order striking a non-compliant paper.

ORDERED in Tampa, Florida, on October 24, 2025.

**All Citations**

Slip Copy, 2025 WL 2997759

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.